#

Michael A. Haskel
Brandon M. Zlotnick
Law Offices of Michael A. Haskel
Attorneys for Plaintiff
167 Willis Avenue
Mineola, NY 11501-2621
Phone: (516) 294-0250
Email: haskelesq2@gmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

CATHAY BANK,                                        **SECOND AMENDED**
                                                    **COMPLAINT**
                            Plaintiff,
                                                    No. 17-CV-3551 (NG) (SIL)
            -against-

JOSE ANTONIO BONILLA and JULIO CESAR
MONTALVO, as Administrators for the Estate of
PAULA MALLIARAKIS, deceased, pursuant to
Limited Letters of Administration, GEORGE
MALLIARAKIS a/k/a GEORGIOS MALLIARAKIS,
26ROADASTORIA LLC, APHIS REALTY, INC.,
1847 ASTORIA LLC, DIONYSIOS KALIAMPOS,
and DIMITRIOS PISTIKOS,

                            Defendants.
--------------------------------------------------------------------x

        Plaintiff CATHAY BANK ("Cathay"), by its attorneys, Law Offices of Michael A.

Haskel, as and for its second amended complaint, alleges:

## PARTIES

        1.      Cathay is, and at all times hereinafter mentioned was, a banking corporation

organized under California law, with a principal place of business at 777 N. Broadway, Los

Angeles, California.

        2.      Defendant GEORGE MALLIARAKIS ("George") is a Florida citizen, with a

residence at 7880 Southeast 113th Court, Jasper, Florida.

3.      PAULA MALLIARAKIS ("Paula") was, at all relevant times up to and including the commencement of this action on June 13, 2017, a New York citizen, with a residence at 3385 Bay Front Place, Baldwin, New York, owned by George and Paula ("Baldwin Property").

4.      Between the commencement of this action on June 13, 2017 and August 28, 2017, Paula moved her residence to Queens, New York. On August 28, 2017, Paula died.

5.      By decree dated September 20, 2019, the Surrogate's Court for New York, Queens County, appointed Defendants JOSE ANTONIO BONILLA and JULIO CESAR MONTALVO limited administrators for the Estate of PAULA MALLIARAKIS, Deceased. JOSE ANTONIO BONILLA ("Bonilla") and JULIO CESAR MONTALVO ("Montalvo") (Bonilla and Montalvo shall collectively be referred to as "Administrators"). The Estate of Paula Malliarakis ("Paula Estate") is the successor in interest to Paula.

6.      Bonilla resides at 201 Shinnecock Court, Melville, New York.

7.      Montalvo resides at 203 Marcia Way, Bridgewater, New Jersey.

8.      Upon information and belief, George and Paula resided together until in or about 2010, and had a special, intimate relationship.

9.      Defendant 26ROADASTORIA LLC ("26RoadAstoria") is a New York limited liability company, with a principal place of business at 23-67 36th Street, Astoria, New York.

10.     Defendant APHIS REALTY, INC. ("Aphis") is a New York corporation, with a principal place of business at 23-67 36th Street, Astoria, New York.

11.     Defendant 1847 ASTORIA LLC ("1847 LLC") is a New York limited liability company, with a place of business at 18-47 26th Road, Astoria, New York.

12.     1847 LLC was formed in New York on November 23, 2015. From its inception up to on or about October 19, 2016, Paula was the managing member, sole member, and owner

of 1847 LLC, and thereafter remained the de jure managing member and sole member, despite a void attempt transfer of ownership in 1847 LLC.

13.     Defendant DIONYSIOS KALIAMPOS ("Kaliampos") is a New York citizen, with a residence at 20-10 19th Street, Astoria, New York.

14.     Upon information and belief, from on or about October 19, 2016 to the present, Kaliampos has nominally been the sole member and owner of 1847 LLC.

15.     During the course of the instant action, Kaliampos represented to Plaintiff's counsel that he was the managing member/principal of 26RoadAstoria, Aphis, and 1847 LLC.

16.     Defendant DIMITRIOS PISTIKOS ("Pistikos") is a New York citizen, with a residence at 23-67 36th Street, Astoria, New York.

17.     Pistikos has been a close friend of Kaliampos's for approximately thirty (30) years.

18.     At all relevant times, Pistikos has been the sole officer, director, and shareholder in Aphis.

19.     At all relevant times, Pistikos purports to have been the managing member and sole member of, and to have held the sole ownership interest in, 26RoadAstoria.

20.     Upon information and belief, since on or about October 19, 2016 to the present, Pistikos has been the de facto managing member, sole member, and sole owner of 1847 LLC.

<u>**SUBJECT MATTER JURISDICTION**</u>

21.     Subject matter jurisdiction over this action arises under 28 U.S.C. § 1332(a)(1), based on diversity of citizenship, with the amount in controversy exceeding $75,000.00.

## BACKGROUND

### The Property Transfers

22.     Prior to February 12, 2010, George was the fee owner of real property located at 18-47 26th Road, Astoria, New York 11102, in Queens, Block 886, Lot 48, which is improved with a residential apartment building (the "1847 Property").

23.     On or about September 24, 2009, a $237,752.83 federal tax lien (the "Federal Tax Lien") was recorded with the Nassau County Clerk against the Baldwin Property, for George's unpaid federal income taxes.

24.     By deed dated February 12, 2010, and recorded April 7, 2010, George conveyed the 1847 Property to George and Paula, as tenants in common ("2010 Transfer").

25.     As of 2010, George was indebted to a number of creditors, including Asia Bank, N.A. ("Asia Bank"), and, upon information and belief, George was insolvent, or was rendered insolvent as a result of the 2010 Transfer.

26.     The 2010 Transfer was without consideration.

27.     By deed dated February 28, 2014 and recorded December 15, 2014, Paula and George conveyed the 1847 Property to Paula alone ("2014 Transfer").

28.     The 2014 Transfer was without consideration.

29.     By deed dated December 2, 2015 and recorded December 31, 2015, Paula conveyed the 1847 Property to 1847 LLC ("2015 Transfer").

30.     The 2015 Transfer was without consideration.

31.     Kaliampos has taken the position that on or about October 19, 2016, by a Membership Interest Sale agreement ("Membership Sale Agreement"), Paula conveyed her full ownership interest in 1847 LLC to Kaliampos (the "2016 Transfer").

32.     Upon information and belief, at the time of the 2016 Transfer, the sole asset of 1847 LLC was the 1847 Property.

33.     The purported consideration for the 2016 Transfer, as set forth in the Membership Sale Agreement, Kaliampos's assumption of liability for the alleged debts on the 1847 Property, which the Membership Sale Agreement stated was $705,000.

**The Mortgages**

34.     On or about December 2, 2015, 1847 LLC entered into a loan agreement with Fifth Avenue Capital, LLC ("Capital") (the "Capital Loan Agreement"), by which Capital loaned to 1847 LLC $600,000 (the "Capital Loan"), collateralized on December 2, 2015 by a $600,000 mortgage on the 1847 Property (the "Capital Mortgage"). The Capital Mortgage contains a provision assigning to Capital all leases and rents arising from the 1847 Property (the "Capital Lease Assignment").

35.     The Capital Mortgage was recorded on December 31, 2015, and on December 10, 2015, a UCC1 Financing Statement, securing Capital's interest in the 1847 Property (the "Capital UCC Statement"), was also recorded. (Collectively, the Capital Loan, Capital Mortgage, Capital Lease Assignment, and Capital UCC Statement are the "Capital Transactions.")

36.     1847 LLC never made any payments on the Capital Loan or Capital Mortgage, with the exception of a prepaid interest payment made at the time of the closing on the Capital Loan and Capital Mortgage.

37.     Upon information and belief, on or about May 5, 2016, 1847 LLC defaulted on the Capital Loan and Capital Mortgage (the "Capital Default").

38.     On or about August 19, 2016, Capital assigned to 26RoadAstoria the Capital Mortgage, by a written assignment (the "Assignment of Mortgage"), which was recorded on

September 7, 2016. 26RoadAstoria purchased the Capital Loan by an agreement dated August 19, 2016 ("Loan Purchase Agreement"), that stated the Capital Loan was in default.

39.      Through the Assignment of Mortgage, 26RoadAstoria acquired all leases to the 1847 Property and became entitled to all rents from the 1847 Property.

40.      Pistikos executed the Loan Purchase Agreement on behalf of 26RoadAstoria. Pistikos paid, from his personal funds, the $662,500 price of the purchase of the Capital Loan.

41.      Pistikos made all decisions on behalf of 26RoadAstoria with regard to the Loan Purchase Agreement and Assignment of Mortgage.

42.      Pistikos had actual knowledge, at the time of the Loan Purchase Agreement and Assignment of Mortgage, that 1847 LLC was in default on the Capital Loan and Capital Mortgage.

43.      At the time of the Loan Purchase Agreement and Assignment of Mortgage, Pistikos intended to acquire the 1847 Property for himself.

44.      On or about August 19, 2016, Capital assigned to 26RoadAstoria the Capital UCC Statement, pursuant to a UCC Financing Statement Amendment (the "Assignment of UCC Statement"), which was recorded on September 1, 2016.

45.      On or about March 1, 2016, 1847 LLC entered into a loan agreement with a company called "Alpha Realty, Inc." ("Alpha") (the "Aphis Loan Agreement"), by which Aphis loaned to 1847 LLC $75,000 (the "Aphis Loan"), as collateral for which, on or about March 1, 2016, 1847 LLC, by Paula, executed a $75,000 mortgage (the "Aphis Mortgage") on the 1847 Property, and a Collateral Assignment of Leases and Rents (the "Aphis Lease Assignment"), assigning to Alpha all 1847 Property leases and all rents arising therefrom. The Aphis Mortgage and the Aphis Lease Assignment were recorded on March 11, 2016.

46.     Aphis contends that Alpha did not exist, and on February 22, 2017, a correction mortgage, changing the Aphis Mortgage's mortgagee from Alpha to Aphis (the "Correction Mortgage"), was recorded. On February 22, 2017, a correction Assignment of Leases and Rents, changing the Aphis Lease Assignment's beneficiary from Alpha to Aphis (the "Correction Lease Assignment"), was recorded. The Aphis Loan Agreement was amended to identify Aphis as the lender. (Collectively, the Aphis Loan, Aphis Mortgage, Correction Mortgage, and Aphis Lease Assignment are the "Aphis Transactions.")

47.     Pistikos made all decisions on behalf of Aphis with regard to the Aphis Transactions.

### The Foreclosure Action

48.     On January 24, 2014, Asia Bank, N.A. ("Asia Bank") brought suit against, among others, George and Paula entitled *Asia Bank, N.A. v. 458 E. 144th Street Realty Corp. et al.*, Supreme Court, Nassau County, Index No. 768/2014 ("Foreclosure Action"), to foreclose a mortgage upon the Baldwin Property in the principal amount of $800,000 (the "Baldwin Mortgage"). At that time, George and Paula were indebted to Asia Bank on the Baldwin Mortgage and the note it collateralized, jointly and severally, in an amount greater than $1.2 million that was at that time due and payable.

49.     The 2014 Transfer was made at a time when George was a defendant in an action for money damages, *i.e.*, the Foreclosure Action, in which a money judgment was sought for any deficiency in the foreclosure sale of the Baldwin Property, and in which George had been served with the summons and complaint on January 30, 2014.

50.     Cathay is the successor-in-interest to Asia Bank, with which Cathay merged in
2015. Cathay was substituted, *nunc pro tunc*, for Asia Bank as the plaintiff in the Foreclosure
Action. (Hereinafter, Asia Bank and Cathay shall be referred to collectively as "Cathay".)

51.     George is indebted to Cathay pursuant to a deficiency judgment entered in the
Foreclosure Action on December 12, 2016, in the amount of $793,294.23 (the "Foreclosure
Judgment"), which was docketed in Nassau County, and only partially satisfied, to the extent of
$109,014.80, with the balance, together with interest, remaining due.

### Other Prior Proceedings and Judgment Involving Paula

### The First Paula Bankruptcy

52.     On or about April 13, 2015, Paula filed a petition under Chapter 13 of the
Bankruptcy Code, in the Eastern District of New York, Case No. 1-15-41630-nhl (the "First
Paula Bankruptcy"), on the eve of the Foreclosure Action's scheduled auction of the Baldwin
Property, in order to delay such auction. In this petition, Paula alleged her estimated assets were
between $0 and $50,000, but her estimated liabilities were between $100,001 and $500,000.

53.     Paula asserted, in a May 2015 filing in the First Paula Bankruptcy, that her
monthly income was $4,166, and that her monthly expenses were $9,076, thereby resulting in a
negative monthly income.

54.     Paula also disclosed, in another filing in the First Paula Bankruptcy, that she was
a party to the Foreclosure Action and that such action was at the judgment stage.

55.     On June 1, 2015, Cathay made a motion in the First Paula Bankruptcy to lift the
automatic stay, so that it could continue the Foreclosure Action, referring to, *inter alia*, the
Foreclosure Action and the Federal Tax Lien.

56.     The First Paula Bankruptcy was dismissed by an order entered July 24, 2015, for
Paula's failure to comply with disclosure requirements or to make Chapter 13 plan payments.

### The Second Paula Bankruptcy

57.     On or about August 31, 2015, Paula filed a petition under Chapter 13 of the
Bankruptcy Code, in the Eastern District of New York, Case No. 1-15-44058 (the "Second Paula
Bankruptcy"), on the eve of another scheduled Baldwin Property auction. (Collectively, the First
Paula Bankruptcy and Second Paula Bankruptcy are the "Paula Bankruptcies".)

58.     Paula's Statement of Financial Affairs in the Second Paula Bankruptcy disclosed
that she was a party to the Foreclosure Action.

59.     Paula asserted, in a September 2015 filing in the Second Paula Bankruptcy, that
her net income from renting out the 1847 Property was $4,466, but that her total net monthly
income, without subtracting any expenses associated with the 1847 Property, was $2,987. Thus,
were Paula to convey the 1847 Property, Paula would have had a negative net monthly income.
(This assertion is the "Paula Negative Net Income Admission.")

60.     Cathay moved to dismiss the Second Paula Bankruptcy on multiple grounds,
including that Paula's dilatory tactic of filing for bankruptcy twice on the eve of scheduled
foreclosure auctions demonstrated bad faith, and that, because, at that time, prior to the
foreclosure sale, over $1.4 million was owed on the Baldwin Mortgage. Cathay also argued that
Paula had a small monthly income, with no prospect of paying the amount due, and thus could
not submit a confirmable plan of bankruptcy reorganization, but would fall further into debt.

61.     The Second Paula Bankruptcy was dismissed pursuant to a so-ordered stipulation
that was entered November 3, 2015 (the "So-Ordered Stipulation"). Paula agreed therein, *inter
alia*, to vacate the Baldwin Property within sixty (60) days; to pay to Cathay $9,000 per month
for use and occupancy; not to further oppose, hinder, or delay the foreclosure auction; and to
dismiss the Paula Federal Action, as defined *infra*, without prejudice as to Cathay.

**The George Bankruptcy**

62.     On January 19, 2016, on the eve of a scheduled auction of the Baldwin Property, Paula filed an involuntary petition against George, under Chapter 11 of the Bankruptcy Code, in the Southern District of New York, Case No. 16-10126-mg (the "George Bankruptcy").

63.     On February 10, 2016, Cathay moved to lift the automatic bankruptcy stay in the George Bankruptcy, reciting Paula's history of dilatory tactics, and arguing, *inter alia*, that Paula had brought the George Bankruptcy as part of a scheme to hinder, delay, or defraud a creditor.

64.     At a hearing on February 29, 2016, and formalized by written order dated March 1, 2016, the Bankruptcy Court granted Cathay's motion to lift the automatic bankruptcy stay, and permitted Cathay to exercise all of its rights and remedies with respect to the Baldwin Property, upon finding that Paula's filing was part of a scheme to delay, hinder, or defraud a creditor, *i.e.*, Cathay (such finding is the "Bankruptcy Scheme Finding").

65.     On May 11, 2016, the Bankruptcy Court dismissed the George Bankruptcy as a sanction based on the Bankruptcy Scheme Finding.

**The Paula Federal Action**

66.     On or about August 30, 2015, Paula brought an action in the United States District Court, Eastern District of New York, entitled *Paula Malliarakis v. George Malliarakis et al.*, No. 15-cv-05060 (the "Paula Federal Action"). Cathay was also named as a defendant. On February 4, 2016, Cathay asserted two counterclaims for money damages against Paula, the first seeking damages for waste, and the second seeking damages for violation of the So-Ordered Stipulation, including Paula's failure to pay use and occupancy, to vacate the Baldwin Property, or to seek dismissal of the Paula Federal Action as against Cathay, and for Paula's bringing the George Bankruptcy. Cathay also sought to recover its attorney fees.

67.     Paula, through counsel, stipulated to a judgment against her on the counterclaims in the Paula Federal Action, in the amount of $455,000, which was entered against Paula in the Eastern District of New York, on May 3, 2016 (the "Cathay Money Judgment").

68.     On May 11, 2016, the Cathay Money Judgment was docketed against Paula in the offices of the County Clerk of the Counties of Nassau and Queens, New York.

69.     The Cathay Money Judgment has not been satisfied.

70.     On or about August 24, 2016, Cathay served a restraining notice upon Paula pursuant to New York Civil Practice Law and Rules § 5222 (the "Restraining Notice").

### Badges of Fraud

**The 2014 Transfer had the following badges of fraud, showing an intent on the part of the participants to hinder, delay, and defraud creditors (the "2014 Transfer Badges of Fraud"):**

71.     There was no consideration for the 2014 Transfer.

72.     Paula and George had a close relationship.

73.     At the time of the 2014 Transfer, Paula and George knew of claims by creditors against them, including Paula and George's indebtedness to Cathay and the pending Foreclosure Action.

74.     Upon information and belief, George was insolvent at the time of, or was rendered insolvent by virtue of, the 2014 Transfer. George's income in 2013 was only $25,721, with all income coming from the rental of real property, yet at that time he was liable, jointly and severally, for at least $800,000 on the Baldwin Mortgage, and for approximately $400,000 in back taxes on the Baldwin Property. George was also underwater on one property he owned or beneficially owned in Bronx, New York, in an amount in excess of $1 million, and underwater on another Bronx property he owned or beneficially owned, in an amount of about $600,000. George's income in 2014 was just $3,361, yet at that time he was liable, jointly and severally, for

over $1.2 million on the Baldwin Mortgage alone. Furthermore, the 2014 Transfer was for no consideration.

75.    The 2014 Transfer, in conjunction with the 2015 Transfer and 2016 Transfer, impaired the enforcement of Cathay's rights as against Paula and George, in that it moved the 1847 Property, or beneficial ownership thereof, further from the reach of Cathay.

76.    Paula and George knew that the 2014 Transfer hindered creditors.

**The 2015 Transfer had the following badges of fraud, showing an intent on the part of the participants to hinder, delay, and defraud creditors (the "2015 Transfer Badges of Fraud"):**

77.    The 2014 Transfer Badges of Fraud.

78.    There was no consideration for the 2015 Transfer.

79.    Paula and 1847 LLC had a close relationship.

80.    1847 LLC failed to follow corporate formalities, as represented by the fact that physical certificates of shares in 1847 LLC were never issued.

81.    At the time of the 2015 Transfer, Paula knew of claims by creditors against her including Paula's indebtedness to Cathay, and the pending Foreclosure Action.

82.    Paula knew that the 2015 Transfer hindered creditors.

83.    The Bankruptcy Scheme Finding.

84.    Upon information and belief, at the time of the 2015 Transfer, Paula, then retired, was insolvent, or was rendered insolvent by the 2015 Transfer. Paula was dependent upon income from the 1847 Property based on, *inter alia*, the Paula Negative Net Income Admission. Also, filings in the Paula Bankruptcies served as an admission to what was at best a compromised personal financial position, prior to the 2015 Transfer. Furthermore, the 2015 Transfer was for no consideration. (Collectively, the reasons set forth in this paragraph are the "Paula 2015 Insolvency Indicators").

85. The earlier 2014 Transfer had been fraudulent, as set forth in the First and Second Causes of Action herein.

86. Paula's knowledge is imputed to 1847 LLC, because she was its sole member.

**The 2016 Transfer had the following badges of fraud, showing an intent on the part of the participants to hinder, delay, and defraud creditors (the "2016 Transfer Badges of Fraud"):**

87. The 2015 Transfer Badges of Fraud.

88. The Single-Member Operating Agreement of 1847 LLC ("1847 LLC Operating Agreement") provides, in Section 7.1, that "No Member may Voluntarily Transfer all of any portion of, or any interest or rights in, the Membership Interest owned by the Member. . . . The voluntary Transfer of any Membership Interests, including Economic Interests, in violation of the prohibition contained in this Section 7.1 shall be deemed invalid, null and void, and of no force and effect." (Such provision is the "Non-Transfer Clause.")

89. The 2016 Transfer purported to effectuate a transfer of Paula's Membership Interest in 1847 LLC. Accordingly, pursuant to the Non-Transfer Clause and New York Limited Liability Company Law §§ 602 and 603, the 2016 Transfer was in violation of the 1847 LLC Operating Agreement and was invalid, null, and void, and of no force and effect.

90. The contract consideration Paula received for her 1847 LLC shares, *i.e.*, the assumption of $705,000 in debt, was inadequate and not a fair equivalent of the value of the 1847 Property.

91. Upon information and belief, prior to the 2016 Transfer, Kaliampos received a "recent sales analysis" in a broker's opinion of value of the 1847 Property ("BOV"), which referred to an "adjusted value" of the 1847 Property of $288 per square foot, lower than the average market price of $483 per square foot stated in the BOV. The BOV stated the lower "adjusted value" was "Due to Litigation Adjustment & Quick Sale."

92.     Upon information and belief, prior to the 2016 Transfer, Pistikos received the BOV.

93.     Upon information and belief, at the time of the 2016 Transfer, Kaliampos believed that the fair market value of the 1847 Property was substantially above the contract consideration.

94.     Upon information and belief, at the time of the 2016 Transfer, Pistikos believed that the fair market value of the 1847 Property was substantially above the contract consideration.

95.     With regard to the 2016 Transfer, Kaliampos, although nominally the purchaser, acted solely on behalf of, and as an agent and front man for, Pistikos.

96.     Kaliampos has admitted the allegations in paragraph 95, through counsel, in the instant action. Pistikos has admitted the allegations in paragraph 95 in deposition testimony in the instant action.

97.     Kaliampos acted as an alter ego of Pistikos with regard to the 2016 Transfer and ownership of the 1847 Property.

98.     Pistikos, and not Kaliampos, was involved in negotiating the price for the 2016 Transfer.

99.     Pistikos, and not Kaliampos, provided the funds used to effectuate the 2016 Transfer. These include, but are not limited to, the payment of attorney fees for the attorneys for Paula and Kaliampos in connection with the transaction.

100.    Although not required by the Membership Sale Agreement, Pistikos paid monies to Paula, and to third parties at her direction, in connection with the closing on the 2016 Transfer.

101.    The first such payment was made by Pistikos to Paula on or about October 19, 2016, when Pistikos gave a check for $48,000 to Bartels Consulting LLC.

102.    In exchange for this check, Ernie Bartels ("Bartels") gave Pistikos cash in the amount of $48,000.

103.    Pistikos then gave Kaliampos this $48,000.

104.    Kaliampos then gave Paula the full amount of this cash (the "$48,000 Cash Payment").

105.    On or about October 22, 2016, Pistikos wrote a check of $11,000 to Bartels personally, ostensibly for acting as Paula's mortgage broker.

106.    On or about October 26, 2016, Pistikos paid to Paula in cash, from Pistikos's own funds, $15,500 (the "$15,500 Cash Payment"). Contemporaneously with this payment, Paula's ownership interest in 1847 LLC was purportedly transferred to Kaliampos.

107.    All consideration received directly by Paula in connection with the 2016 Transfer was received in cash, and was not accounted for within the Membership Sale Agreement.

108.    Upon information and belief, the nature of the $48,000 Cash Payment and $15,500 Cash Payment, both as being in cash and without basis in the Membership Sale Agreement, concealed such payments from Cathay and frustrated Cathay's enforcement of the Cathay Money Judgment.

109.    At the time of the 2016 Transfer, Kaliampos and Pistikos had an oral agreement that Kaliampos would initially hold title to the 1847 Property, and it would later be decided who would ultimately own it. However, in the event that Kaliampos did not transfer the 1847 Property to Pistikos, Kaliampos was required to reimburse Pistikos for all of Pistikos's disbursements in connection with the 2016 Transfer.

110.    Kaliampos has not made such reimbursement to Pistikos.

111.    Subsequent to the 2016 Transfer, Pistikos, not Kaliampos, has made all decisions on behalf of 1847 LLC, including those with regard to the 1847 Property.

112.    When 1847 LLC began receiving rents from tenants from of the 1847 Property ("1847 Property Tenants"), upon information and belief, these rents were deposited into the account of Aphis, a company wholly owned by Pistikos, rather than into an account in the name of 1847 LLC or Kaliampos.

113.    From the time 1847 LLC began receiving rents from 1847 Property Tenants, Pistikos claims to have personally paid all expenses associated with the 1847 Property.

114.    From the time of the 2016 Transfer, Pistikos made all decisions with regard to maintenance and upkeep of the 1847 Property, hired all contractors with regard to such maintenance, negotiated all leases with 1847 Property Tenants and set rent amounts, made all decisions to evict 1847 Property Tenants, and exclusively, on behalf of 1847 LLC, hired and communicated with counsel in connection with such evictions.

115.    In or about August 2019, Pistikos began entering into leases with 1847 Property Tenants in his own name, instructing 1847 Property Tenants to pay their rents directly to Pistikos, and, upon information and belief, depositing the rents in his personal account.

116.    Kaliampos and Pistikos were nominally conflicted with regard to the 2016 Transfer, because Pistikos was the sole shareholder of both the mortgagees whose mortgages on the 1847 Property Kaliampos assumed as consideration for the 2016 Transfer, *i.e.*, 26RoadAstoria and Aphis.

117.    Upon information and belief, Kaliampos and Pistikos, despite these conflicts, did not hire separate attorneys, never signed an agreement between themselves or a waiver of

conflicts, and 26RoadAstoria and Aphis never attempted to collect on the mortgage debts assumed by Kaliampos under the Membership Sale Agreement, although Kaliampos never made any payments on such debts.

118.    Neither Kaliampos, Pistikos, 26RoadAstoria, nor Aphis maintained records that would be maintained by mortgagees and owners concerning their respective rights to the 1847 Property.

119.    Although 26RoadAstoria was entitled to receive rents from the 1847 Property under the Capital Lease Assignment, 26RoadAstoria did not collect any such rents, although Aphis, a creditor junior to 26RoadAstoria with regard to the 1847 Property, did.

120.    The Cathay Money Judgment had been docketed against Paula, with the Nassau and Queens County Clerks, providing actual, constructive, and/or inquiry notice to Kaliampos and Pistikos of the existence of such judgment against the transferor in the 2016 Transfer.

121.    By the time of the 2016 Transfer, 1847 LLC had incurred the Capital Default, of which Kaliampos and Pistikos had actual notice from the Loan Purchase Agreement.

122.    Upon information and belief, Paula was insolvent at the time of the 2016 Transfer, or was rendered insolvent by the 2016 Transfer, as shown by, *inter alia*, the Paula 2015 Insolvency Indicators, the Paula Bankruptcies' files, the Cathay Money Judgment and filings in the Paula Federal Action, the pendency of the Foreclosure Action, the Capital Default, and, upon information and belief, the circumstance that Paula's only income at the time of the 2016 Transfer, exclusive of 1847 Property rents, was approximately $1,500 monthly Social Security payments. (Collectively, these reasons are the "Paula 2016 Insolvency Indicators.")

123.    Kaliampos and Pistikos were on actual, constructive, and/or inquiry notice, prior to the 2016 Transfer, of the Paula 2016 Insolvency Indicators, the absence of consideration for

the 2014 Transfer, the Paula Bankruptcies and the filings therein, and the George Bankruptcy and the filings therein.

124.    Pistikos concealed his role in the 2016 Transfer by having Kaliampos pose as the nominal purchaser in the 2016 Transfer, although Pistikos himself was funding Kaliampos's obligations under the Membership Sale Agreement.

125.    Paula did not transfer, to Kaliampos, Pistikos, or to anyone else, in connection with the 2016 Transfer, physical share certificates in 1847 LLC.

126.    No one recorded with the Office of the New York City Register the tax return that was required under New York State Tax Law §§ 1402 and 1409 because the 2016 Transfer represented the conveyance of a controlling interest in a limited liability company that held a one hundred percent (100%) interest in the 1847 Property.

127.    Upon information and belief, 1847 LLC's books and records were not transferred at the time of the 2016 Transfer, as ordinarily would have occurred.

128.    Paula continued collecting rent from the 1847 Property Tenants for months after the 2016 Transfer closed, although she was no longer the beneficial owner of the 1847 Property.

129.    The 1847 Property Tenants were not informed of the 2016 Transfer for months after the transaction.

130.    Paula knew of claims by creditors against her at the time of the 2016 Transfer, including Paula's indebtedness to Cathay, and Paula knew that the 2016 Transfer hindered creditors.

131.    The 1847 Property was worth approximately $1.5 million at the time of the 2016 Transfer.

#

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>

**(Fraudulent Conveyance – Setting Aside 2014 Transfer as Actually Fraudulent)**

132.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 131 above as if fully set forth herein.

133.    Upon information and belief, the 2014 Transfer was intended, on the part of both Paula and George, to hinder, delay, and defraud creditors, including Cathay, and thus was fraudulent within the meaning of New York Debtor and Creditor Law ("DCL") § 276. The basis for this information and belief is the 2014 Transfer Badges of Fraud.

134.    Accordingly, under DCL §§ 276 and 278, the 2014 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title in the 1847 Property should be restored to preconveyance status.

## <u>AS AND FOR A SECOND CAUSE OF ACTION</u>

**(Fraudulent Conveyance – Setting Aside 2014 Transfer as Constructively Fraudulent)**

135.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 134 above as if fully set forth herein.

136.    The 2014 Transfer was a fraudulent conveyance pursuant to DCL § 273, in that it was made without fair consideration: it was for no consideration and not made in good faith (such circumstances are the "Constructive Fraud Core Elements"), and upon information and belief, George was insolvent at the time or rendered insolvent thereby, as set forth in paragraph 74 above.

137.    The 2014 Transfer was also a fraudulent conveyance pursuant to DCL § 273-a, in that it satisfied the Constructive Fraud Core Elements, and at the time of the transfer, George was a defendant in an action for money damages, *i.e.*, the Foreclosure Action, and George has failed to satisfy fully a final judgment docketed against him, *i.e.*, the Foreclosure Judgment.

138.    The 2014 Transfer was also a fraudulent conveyance pursuant to DCL § 275, in that it satisfied the Constructive Fraud Core Elements, and George intended or believed, at the time of the 2014 Transfer, that he would incur debts beyond his ability to pay as they matured.

139.    The bases for the allegations in paragraphs 136, 137, and 138 above that the 2014 Transfer was not made in good faith are the 2014 Transfer Badges of Fraud.

140.    The basis for the allegations in paragraph 138 above that George intended or believed, at the time of the 2014 Transfer, that he would incur debts beyond his ability to pay as they matured, is that George was a defendant in the Foreclosure Action to which he did not have any meritorious defense, such that judgment was ultimately entered against him; he knew that his obligations to pay property taxes on the Baldwin Property and interest on the Baldwin Mortgage and corresponding note would continue to accrue; and he was underwater, in the amount of over $1.6 million, on two properties in Bronx, New York, as set forth in paragraph 74 above.

141.    Accordingly, under DCL §§ 273, 273-a, 275, and 278, the 2014 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title in the 1847 Property should be restored to its preconveyance status.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Fraudulent Conveyance – Action for Damages Resulting from 2014 Transfer)**

142.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 141 above as if fully set forth herein.

143.    Cathay has been damaged by the fraudulent conveyance represented by the 2014 Transfer, and is entitled to recover damages from the parties thereto or their successors.

144.    Accordingly, under DCL §§ 273, 273-a, 275, 276, and 278, Cathay is entitled to recover damages against George and the Paula Estate in an amount be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(Fraudulent Conveyance – Setting Aside 2015 Transfer as Actually Fraudulent)**

145.    Cathay repeats and reiterates every allegation set forth in paragraphs 1 through 144 above as if fully set forth herein.

146.    Upon information and belief, the 2015 Transfer was intended, on the part of both Paula and 1847 LLC, to hinder, delay, and defraud creditors, including Cathay, and thus was fraudulent within the meaning of DCL § 276. The bases for this information and belief are the 2015 Transfer Badges of Fraud.

147.    Paula's knowledge and intent to hinder, delay, and defraud creditors, including Cathay, is imputed to 1847 LLC, given Paula's status as sole member of 1847 LLC at the time of the 2015 Transfer.

148.    Accordingly, under DCL §§ 276 and 278, the 2015 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title in the 1847 Property should be restored to its preconveyance status.

## AS AND FOR A FIFTH CAUSE OF ACTION

**(Fraudulent Conveyance – Setting Aside 2015 Transfer as Constructively Fraudulent)**

149.    Cathay repeats and reiterates each and every allegation set forth in paragraphs 1 through 148 above as if fully set forth herein.

150.    The 2015 Transfer was a fraudulent conveyance pursuant to DCL § 273, in that it satisfied the Constructive Fraud Core Elements; and upon information and belief, based on the Paula 2015 Insolvency Indicators, Paula was insolvent at the time of the 2015 Transfer or the 2015 Transfer rendered Paula insolvent.

151.    The 2015 Transfer was also a fraudulent conveyance pursuant to DCL § 275, in that it satisfied the Constructive Fraud Core Elements, and Paula intended or believed, at the time of the 2015 Transfer, that she would incur debts beyond her ability to pay as they mature.

152.    The bases for the allegations in paragraphs 150 and 151 above that the 2015 Transfer was not made in good faith are the 2015 Transfer Badges of Fraud.

153.    The bases for the allegation in paragraph 151 above that Paula intended or believed, at the time of the 2015 Transfer, that she would incur debts beyond her ability to pay as they mature, are, *inter alia*, (a) the Paula Negative Net Income Admission; (b) the Paula 2015 Insolvency Indicators; and (c) Paula had violated the So-Ordered Stipulation, and thus knew she could be held liable for damages asserted for claims for such violation.

154.    Accordingly, under DCL §§ 273, 275, and 278, the 2015 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title in the 1847 Property should be restored to its preconveyance status.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Fraudulent Conveyance – Action for Damages Resulting from 2015 Transfer)

155.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 154 above as if fully set forth herein.

156.    Cathay has been damaged by the fraudulent conveyance represented by the 2015 Transfer, and is entitled to recover damages from the parties thereto and their successors.

157.    Accordingly, under DCL §§ 273, 275, 276, and 278, Cathay is entitled to recover damages against 1847 LLC and the Paula Estate in an amount be determined at trial.

#

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Fraudulent Conveyance – Setting Aside 2016 Transfer as Actually Fraudulent)

158.   Cathay repeats and reiterates each and every allegation in paragraphs 1 through 157 above as if fully set forth herein.

159.   Upon information and belief, the 2016 Transfer was intended, on the part of Paula, Kaliampos, and Pistikos, to hinder, delay, and defraud creditors, including Cathay, and thus was fraudulent within the meaning of DCL § 276. The bases for this information and belief are the 2016 Transfer Badges of Fraud.

160.   Accordingly, under DCL §§ 276 and 278, the 2016 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title to the ownership interest in 1847 LLC should be restored to its preconveyance status.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Fraudulent Conveyance – Setting Aside 2016 Transfer as Constructively Fraudulent)

161.   Cathay repeats and reiterates each and every allegation in paragraphs 1 through 160 above as if fully set forth herein.

162.   The 2016 Transfer was a fraudulent conveyance pursuant to DCL § 273, in that:

(a)   it was made without fair consideration, in that the consideration provided therefor was not a fair equivalent therefor, and was disproportionately small as compared with the value of the ownership interest conveyed thereby (the "2016 Lack of Fair Consideration"), and the conveyance was not made in good faith ("lack of good faith") (collectively the 2016 Lack of Fair Consideration and the lack of good faith are the "2016 Constructive Fraud Core Elements"); and

#

(b) Paula was insolvent at the time of the 2016 Transfer, or the 2016 Transfer rendered Paula insolvent, as shown by the Paula 2015 Insolvency Indicators and the Paula 2016 Insolvency Indicators.

163. The 2016 Transfer was also a fraudulent conveyance pursuant to DCL § 273-a, due to:

(a) The 2016 Constructive Fraud Core Elements;

(b) At the time of the 2016 Transfer, the Cathay Money Judgment had been docketed against Paula, with the County Clerks of Nassau and Queens, in an action against her for money damages, *i.e.*, the counterclaims against her in the Paula Federal Action; and

(c) Paula and the Paula Estate have failed to satisfy the Cathay Money Judgment.

164. The 2016 Transfer was also a fraudulent conveyance pursuant to DCL § 275, due to:

(a) The 2016 Constructive Fraud Core Elements; and

(b) Paula intended or believed, at the time of the 2016 Transfer, that she would incur debts beyond her ability to pay as they matured, based on the Paula 2015 Insolvency Indicators and Paula 2016 Insolvency Indicators.

165. The bases for the allegations in paragraphs 162(a), 163(a), and 164(a) above that the 2016 Transfer was not made in good faith are the 2016 Transfer Badges of Fraud.

166. Accordingly, under DCL §§ 273, 273-a, 275, and 278, the 2016 Transfer should be adjudged fraudulent, null, and void as to Cathay, such conveyance should be vacated and set aside, and title to the ownership interest in 1847 LLC should be restored to its preconveyance status.

#

## AS AND FOR A NINTH CAUSE OF ACTION

### (Fraudulent Conveyance – Action for Damages Resulting from 2016 Transfer)

167.　Cathay repeats and reiterates each and every allegation in paragraphs 1 through 166 above as if fully set forth herein.

168.　Cathay has been damaged by the fraudulent conveyance represented by the 2016 Transfer, and is entitled to recover damages.

169.　Accordingly, under DCL §§ 273, 273-a, 275, 276, and 278, Cathay is entitled to recover damages against Kaliampos, Pistikos, and the Paula Estate in an amount to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Attorney Fees in Actions for Actually Fraudulent Conveyances)

170.　Cathay repeats and reiterates each and every allegation in paragraphs 1 through 169 above as if fully set forth herein.

171.　Because, as set forth above, the 2014 Transfer, 2015 Transfer, and 2016 Transfer were made with actual intent to defraud, on the part of both the transferor(s) and the transferee with regard to each transfer, pursuant to DCL § 276-a Cathay should be awarded reasonable attorney's fees as against George, 1847 LLC, Kaliampos, Pistikos, and the Paula Estate.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### (Declaratory Judgment That 26RoadAstoria Is Not a Bona Fide Encumbrancer and Seeking Nullification of Capital Mortgage, Assignment of Mortgage, Capital UCC Statement, Assignment of UCC Statement, and Capital Lease Assignment)

172.　Cathay repeats and reiterates each and every allegation in paragraphs 1 through 171 above as if fully set forth herein.

173.　This cause of action is brought pursuant to Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL").

174.    Cathay has an interest in the 1847 Property in the form of a judgment lien against the 1847 Property, because Paula was still sole owner of 1847 LLC, which, in turn, was the sole owner of the 1847 Property, when Cathay docketed the Cathay Money Judgment against Paula, and such judgment became a lien against the 1847 Property.

175.    In the alternative, assuming *arguendo* it is determined that the docketing of the Cathay Money Judgment did not create a lien against the 1847 Property, if the 2015 Transfer and 2016 Transfer are voided and set aside as requested herein, the Paula Estate will own directly the 1847 Property, which would then be subject to the Cathay Money Judgment.

176.    26RoadAstoria claims an estate or interest in the 1847 Property adverse to that of Cathay. Specifically, 26RoadAstoria asserts that its rights under the Assignment of Mortgage and Assignment of UCC Statement (collectively, the "26RoadAstoria Transactions") are superior to the rights of Cathay.

177.    Capital was on actual, inquiry, and/or constructive notice, prior to the Capital Transactions, of facts showing that the 2014 Transfer and 2015 Transfer were fraudulent conveyances.

178.    Upon information and belief, Capital was on actual, constructive, and/or inquiry notice that the 2010 Transfer was without consideration. Had Capital investigated the 2010 Transfer, Capital would have learned that George was insolvent.

179.    Upon information and belief, counsel to Paula in connection with the Capital Transactions provided to counsel to Capital, prior to the closing on the Capital Transactions, two title searches on the 1847 Property (the "Paula Title Searches"), each of which showed that the 2014 Transfer was made for no consideration. These placed Capital on actual notice that the 2014 Transfer was made for no consideration.

180.    Upon information and belief, the Paula Title Searches also revealed that the First Paula Bankruptcy had been filed, placing Capital on constructive and/or inquiry notice of the contents of the file in the First Paula Bankruptcy.

181.    Upon information and belief, counsel to Paula in connection with the Capital Transactions also advised counsel to Capital, prior to the closing on the Capital Transactions, of both Paula Bankruptcies, and that both had been dismissed. This placed Capital on constructive and/or inquiry notice of the contents of the files in both Paula Bankruptcies.

182.    Upon information and belief, prior to the Capital Transactions, another title search performed, at Capital's request, revealed that the 2014 Transfer was without consideration, based on recorded documents. Capital had actual notice of this finding from such search.

183.    Upon information and belief, Capital knew, according to recorded transfer documents, that the 2015 Transfer, occurring shortly before Capital entered into the Capital Transactions, was also without consideration.

184.    A reasonably prudent lender obtaining a mortgage on the 1847 Property would have conducted a bankruptcy search on its prior owners, before extending a loan to 1847 LLC, and would have reviewed documents on file that would have been disclosed by such searches.

185.    Prior to Capital's entering into the Capital Transactions, Capital arranged for a bankruptcy search on Paula, but Paula's surname was misspelled "Malliariakis" in that search, resulting in no bankruptcies being found in the search. Had Paula's surname been spelled correctly, the search would have found the Paula Bankruptcies.

186.    Prior to entering into the Capital Transactions, a reasonably prudent lender in the position of Capital engaging in a diligent inquiry, with actual notice of the Paula Bankruptcies, would have reviewed the filings therein, and would have learned that Paula was insolvent at the

time of the 2015 Transfer, and/or was made insolvent by such transfer, and learned of the pending Foreclosure Action. Capital is charged with knowledge of all of these facts.

187.    Prior to entering into the Capital Transactions, a reasonably prudent lender in the position of Capital engaging in a diligent inquiry, even without actual notice of the Paula Bankruptcies, would have discovered the Paula Bankruptcies and would have reviewed the filings therein, and learned that Paula was insolvent at the time of the 2015 Transfer, and/or was made insolvent by such transfer, and learned of the pending Foreclosure Action. Capital is charged with notice of all of these facts.

188.    Further, even assuming *arguendo* no notice by documents of record, a reasonably prudent lender would have made inquiries of the circumstances of the 2014 Transfer and 2015 Transfer, and, upon a diligent inquiry, would have discovered that each of those transfers was fraudulent. Accordingly, Capital is also charged with notice that the 2014 Transfer and 2015 Transfer were both fraudulent conveyances, and accordingly the deeds by which those transfers were effectuated were invalid, null, and void as a result of fraud.

189.    In light of the 2014 Transfer and 2015 Transfer having been made without consideration, a reasonably prudent lender in Capital's position would have performed a credit check on Paula prior to the Capital Transactions, which would have revealed Paula's insolvency at the time of, or impending insolvency as a result of, the 2015 Transfer, and would have revealed that the 2014 Transfer and 2015 Transfer were fraudulent conveyances.

190.    Upon information and belief, Capital did not perform, or arrange for another to perform on its behalf, such a credit check on Paula.

191. A reasonably prudent lender in the position of Capital at the time of the Capital Transactions would have obtained information on 1847 LLC's finances, which would have revealed 1847 LLC had no assets other than the fraudulently conveyed 1847 Property.

192. Upon information and belief, Capital did not obtain, or arrange for another to obtain, such information.

193. A reasonably prudent lender in Capital's position would have discovered the information set forth above, and would not have entered into the Capital Transactions.

194. Capital acted in bad faith in entering into the Capital Transactions, and is not a bona fide encumbrancer with regard to those transactions.

195. As assignee of Capital, 26RoadAstoria is subject to the same claims and defenses that could be raised against Capital, as well as those based upon information 26RoadAstoria acquired after the Assignment of Mortgage.

196. Facts occurring since December 2015, of which 26RoadAstoria also had actual, constructive, or inquiry notice at the time of the Assignment of Mortgage include, but are not limited to:

(a)    the George Bankruptcy;

(b)    the Bankruptcy Scheme Finding;

(c)    the Cathay Money Judgment;

(d)    the BOV;

(e)    in May 2016, on what proved to be an unsuccessful attempt by 1847 LLC to sell the 1847 Property to Pistikos, a transaction in which there was an attempt to change the purchaser to 26RoadAstoria (the "Unsuccessful Sale Attempt"), no title insurer would provide title insurance without satisfying material conditions;

(f)     the Capital Default; and

(g)     that 1847 LLC had never made any payments on the Capital Loan or Capital
        Mortgage, apart from the prepaid interest.

197.    26RoadAstoria was informed, prior to entering into the 26RoadAstoria

Transactions, of the Paula Bankruptcies, George Bankruptcy, and Cathay Money Judgment,

which provided 26RoadAstoria with notice that Paula was insolvent and the 2014 Transfer and

2015 Transfer were fraudulent conveyances.

198.    A reasonably prudent lender obtaining the assignment of a mortgage on the 1847

Property, engaging in a diligent inquiry, would have reviewed all of the documents filed in

bankruptcy proceedings brought by or against its prior owners, and 26RoadAstoria had notice of

the contents thereof.

199.    Even if the Loan Purchase Agreement had not informed 26RoadAstoria of the

Capital Default, and if 26RoadAstoria had not had actual knowledge that 1847 LLC had never

made any payments on the Capital Loan or Capital Mortgage other than the prepaid interest, a

reasonably prudent lender in the position of 26RoadAstoria would have performed a credit check

on 1847 LLC prior to the Assignment of Mortgage.

200.    The running of a credit check on 1847 LLC would have revealed the Capital

Default, and 1847 LLC's failure to make any payments on the Capital Loan or Capital Mortgage,

apart from the prepaid interest.

201.    Upon information and belief, 26RoadAstoria did not run, or arrange for another to

run on its behalf, a credit check on 1847 LLC.

202.    Further, even assuming *arguendo* no notice by documents of record, a reasonably

prudent lender would have made inquiries into the circumstances of the 2014 Transfer and 2015

Transfer, which would have revealed that each of those transfers was fraudulent. Accordingly, 26RoadAstoria is also charged with actual, constructive, and/or inquiry notice that the 2014 Transfer and 2015 Transfer were fraudulent conveyances.

203.    A reasonably prudent lender in the position of 26RoadAstoria at the time of the 26RoadAstoria Transactions would have known the information set forth above, and, based on such information, would not have entered into the 26RoadAstoria Transactions.

204.    26RoadAstoria acted in bad faith in entering into the 26RoadAstoria Transactions, and is not a bona fide encumbrancer with respect to the 26RoadAstoria Transactions, Capital Mortgage, or Capital UCC Statement.

205.    In addition, the Capital Mortgage and other Capital Transactions were extinguished by the 2016 Transfer. This occurred because the 2016 Transfer caused the 1847 Property, and the Capital Mortgage on the 1847 Property, to be owned by the same person at the same time.

206.    As alleged in the 2016 Transfer Badges of Fraud above, Pistikos was the alter ego of Kaliampos with regard to the 2016 Transfer and ownership of the 1847 Property; paid all direct compensation to Paula in connection with the 2016 Transfer; and, after the 2016 Transfer, made all decisions, received all revenues, and incurred all costs in connection with the 1847 Property.

207.    Upon information and belief, after the 2016 Transfer, 1847 LLC was so dominated by Pistikos, and its separate identity so disregarded, such that 1847 LLC primarily transacted Pistikos's business rather than its own, and 1847 LLC and Pistikos were alter egos of one another.

#

208.   The bases for the information and belief set forth in paragraph 207207 above are as follows:

(a)   The 2016 Transfer Badges of Fraud;

(b)   Upon information and belief, corporate formalities for 1847 LLC were absent. The basis for this allegation includes the facts that the share certificates for 1847 LLC were never issued, and no documents identified the members, officers, or shareholders of 1847 LLC;

(c)   Upon information and belief, 1847 LLC had no bank accounts or credit card accounts;

(d)   Upon information and belief, 1847 LLC filed no tax returns;

(e)   Upon information and belief, 1847 LLC never had any assets other than the 1847 Property;

(f)   At Pistikos's direction, 1847 LLC never created records relating to the 1847 Property, or filed taxes;

(g)   After the 2016 Transfer, Pistikos made all decision on behalf of 1847 LLC.

209.   Pistikos exercised complete domination and control over 1847 LLC after the 2016 Transfer.

210.   After the 2016 Transfer, 1847 LLC was a sham company and did not have an existence separate from Pistikos.

211.   Thus, Pistikos should be treated as the true owner of the 1847 Property after the 2016 Transfer.

212.   26RoadAstoria was a sham company and did not have an existence separate from that of Pistikos.

213.    Upon information and belief, 26RoadAstoria was so dominated by Pistikos, and its separate identity so disregarded, such that 26RoadAstoria primarily transacted Pistikos's business rather than its own and 26RoadAstoria and Pistikos were alter egos of one another.

214.    The bases for the information and belief set forth in paragraph 213 above are:

(a)    Upon information and belief, corporate formalities for 26RoadAstoria were absent. The basis for this allegation includes the facts that, upon information and belief, the share certificates for 26RoadAstoria were never issued, and no documents identified the members, officers, or shareholders of 26RoadAstoria;

(b)    Pistikos used his own personal funds to transact 26RoadAstoria's business;

(c)    Upon information and belief, 26RoadAstoria had no bank account;

(d)    Upon information and belief, 26RoadAstoria filed no tax returns.

(e)    Upon information and belief, 26RoadAstoria never had any assets other than the Capital Loan, Capital Mortgage, and Capital UCC Statement; and

(f)    Although 26RoadAstoria was entitled to receive rents from the 1847 Property Tenants under the Capital Lease Assignment, 26RoadAstoria never collected any such rents, although Aphis, a creditor junior to 26RoadAstoria, did.

215.    Pistikos exercised complete domination over 26RoadAstoria with respect to the Assignment of Mortgage, in that he was the sole member of 26RoadAstoria, he made all decisions on behalf of 26RoadAstoria, and he provided all funds for the purchase of the Capital Loan.

216.    26RoadAstoria was formed for the purpose of perpetrating a fraud upon Plaintiff. Upon information and belief, it was originally formed in April 2016 to purchase the 1847 Property in the Unsuccessful Sale Attempt. Later, in August 2016, it was used to accept the

Assignment of Mortgage. Upon information and belief, a purpose of both transactions was to hinder Plaintiff from collecting on a judgment or expected judgment against George and/or Paula, either by moving the 1847 Property another step away from its ownership by George and/or Paula, or by obtaining a lien on the 1847 Property that would compete with Plaintiff's interests in the 1847 Property.

217.    Pistikos used his domination of 26RoadAstoria to perpetrate a fraud or wrong against Cathay, with regard to the Assignment of Mortgage, which hindered Cathay's ability to enforce its rights.

218.    As a result, the corporate veil between 26RoadAstoria and Pistikos should be pierced, such that Pistikos is treated as the true assignee with regard to the Assignment of Mortgage, and the true owner of the Capital Mortgage.

219.    Because ownership of the 1847 Property and of the Capital Mortgage became vested, through the use of alter egos and sham companies, in the same person, *i.e.*, Pistikos, the Capital Mortgage was merged and extinguished.

220.    Upon information and belief, the merger of the 1847 Property and of the Capital Mortgage was intended by Pistikos. The basis for this information and belief includes the fact that 26RoadAstoria never collected rents from the 1847 Property.

221.    In the event that the Capital Mortgage were found to continue to exist even upon Pistikos's de facto acquisition of the 1847 Property, it might adversely affect the intervening rights of a third party, *i.e.*, Cathay, in that the continued existence of the Capital Mortgage might act as a lien on the 1847 Property that would compete with Cathay's interests in the 1847 Property.

222.     Justice requires that the merger and extinguishment of the Capital Mortgage, and the other Capital Transactions, be found here.

223.     An actual controversy ripe for judicial determination exists between Cathay and 26RoadAstoria, the outcome of which will affect the rights of the parties. There is presently a justiciable dispute between Cathay and 26RoadAstoria as to whether 26RoadAstoria is a bona fide encumbrancer with rights in the 1847 Property that supersede Cathay's rights as judgment creditor, and whether the Capital Mortgage continues to exist and act as a lien on the 1847 Property.

224.     Cathay is entitled to a declaration that the 26RoadAstoria Transactions, Capital Mortgage, and Capital UCC Statement, and Capital Lease Assignment (collectively, the "Capital-26RoadAstoria Transactions") are ineffective, subordinate, and invalid against any person, or, in the alternative, against Cathay's claims against the 1847 Property.

225.     There is no adequate remedy at law to resolve these competing claims.

226.     No defendant as to this cause of action is unknown, an infant, mentally retarded, mentally ill, or an alcohol abuser.

227.     The judgment sought by Cathay will not affect a person or persons not in being or ascertained at this action's commencement, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the 1847 Property, and every person in being who would have been entitled to such estate or interest if such event had happened immediately before this action's commencement is a named party.

228.     Accordingly, Cathay seeks a declaratory judgment adjudging that 26RoadAstoria is not a bona fide encumbrancer with regard to the Capital-26RoadAstoria Transactions, that the Capital-26RoadAstoria Transactions are fraudulent, null, and void, and be discharged of record,

that the Capital Mortgage is merged, extinguished, null and void and of no effect, and adjudging

that 26RoadAstoria, and every person claiming under it, be barred from all claims to an estate or

interest in the 1847 Property; or, in the alternative, that any rights of 26RoadAstoria, and any

other person claiming under it, to the 1847 Property under the Capital-26RoadAstoria

Transactions, are subordinate to Cathay's interests in the 1847 Property.

## AS AND FOR A TWELFTH CAUSE OF ACTION

**(Declaratory Judgment That Aphis Is Not a Bona Fide Encumbrancer and Seeking
Nullification of Aphis Mortgage, Correction Mortgage, and Aphis Lease Assignment)**

229.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through

228 above as if fully set forth herein.

230.    This cause of action is brought pursuant to Article 15 of the RPAPL.

231.    Cathay has an interest in the 1847 Property as set forth above.

232.    Aphis claims an estate or interest in the 1847 Property adverse to that of Cathay.

Specifically, Aphis asserts that its rights under the Aphis Transactions are superior to the rights

of Cathay.

233.    At the time it entered into the Aphis Transactions, Aphis was on actual,

constructive, and/or inquiry notice of facts demonstrating that the 2014 Transfer and 2015

Transfer were fraudulent conveyances.

234.    Aphis arranged for a title search on the 1847 Property, which, upon information

and belief, revealed that no consideration was paid for the 2014 Transfer or the 2015 Transfer.

235.    A reasonably prudent lender lending money to 1847 LLC collateralized by a

mortgage on the 1847 Property would have first conducted a bankruptcy search on the 1847

Property's prior owners, and reviewed documents on file that would have been disclosed by such

searches.

236.    Although Aphis arranged for a bankruptcy search on 1847 LLC, it did not arrange for ones on Paula or on George, which would have revealed the Paula Bankruptcies and the George Bankruptcy. A review of the documents filed in the Paula Bankruptcies and the George Bankruptcy would have revealed that: (a) Paula was insolvent at the time of the 2015 Transfer, and/or was made insolvent by such transfer; (b) the Foreclosure Action was pending against Paula; (c) Cathay had moved in the George Bankruptcy to lift the automatic bankruptcy stay on the ground that the involuntary petition therein had been brought as part of a scheme to hinder, delay, or defraud a creditor, *i.e.*, Cathay; and (d) the George Bankruptcy was still open.

237.    A reasonably prudent lender in the position of Aphis, engaging in a diligent inquiry, would have obtained the information set forth above and, based on such information, would not have entered into the Aphis Transactions.

238.    Furthermore, a reasonably prudent lender would have made inquiries of the circumstances of the 2014 Transfer and 2015 Transfer, and, had a diligent inquiry been made, it would have revealed each transfer was fraudulent. Accordingly, Aphis is charged with notice that the 2014 Transfer and 2015 Transfer were fraudulent conveyances. A reasonably prudent lender that had learned such things would not have entered into the Aphis Transactions.

239.    A reasonably prudent lender in Aphis's position would have performed a credit check on Paula prior to the Aphis Transactions, which would have revealed Paula's insolvency at the time of, or impending insolvency as a result of, the 2015 Transfer. Upon information and belief, Aphis did not perform, or arrange for another to perform on its behalf, such a credit check.

240.    A reasonably prudent lender in the position of Aphis at the time of the Aphis Transactions would have obtained information on 1847 LLC's finances, which would have

revealed 1847 LLC's only asset was the fraudulently conveyed 1847 Property. Upon information and belief, Aphis did not obtain, or arrange for another to obtain, such information.

241.    A reasonably prudent lender in Aphis's position at the time of the Aphis Transactions, engaging in a diligent inquiry, would have known the information set forth above, and would not have entered into the Aphis Transactions.

242.    Aphis acted in bad faith in entering into the Aphis Transactions, and is not a bona fide encumbrancer with respect to the Aphis Transactions.

243.    An actual controversy ripe for judicial determination exists between Cathay and Aphis, the outcome of which will affect the rights of the parties. There is presently a justiciable dispute between Cathay and Aphis as to whether Aphis is a bona fide encumbrancer with rights in the 1847 Property that supersede those of Cathay as judgment creditor.

244.    Cathay is entitled to a declaration that the Aphis Transactions are ineffective, subordinate, and invalid against Cathay's claims against the 1847 Property.

245.    There is no adequate remedy at law to resolve these competing claims.

246.    No defendant as to this cause of action is unknown, an infant, mentally retarded, mentally ill, or an alcohol abuser.

247.    The judgment sought by Cathay will not affect a person or persons not in being or ascertained at this action's commencement, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the property involved, and every person in being who would have been entitled to such estate or interest if such event had happened immediately before this action's commencement is a named party.

#

248.     Accordingly, Cathay requests a declaratory judgment adjudging that Aphis is not a bona fide encumbrancer with regard to the Aphis Transactions, that the Aphis Transactions are fraudulent, null, and void, and be discharged of record, and that Aphis, and every person claiming under it, be barred from all claims to an estate or interest in the 1847 Property; or, in the alternative, that any rights of Aphis, and any other person claiming under it, to the 1847 Property under the Aphis Transactions, are subordinate to Cathay's interests in the 1847 Property.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

### (Fraud to Deprive of Cathay of Its Rights as Creditor)

249.     Cathay repeats and reiterates each and every allegation in paragraphs 1 through 248 above as if fully set forth herein.

250.     Upon information and belief, Paula, 1847 LLC, 26RoadAstoria, Kaliampos, and Pistikos knowingly and willingly conspired and agreed among themselves to engage in a fraudulent scheme to deprive Cathay of its rights as a creditor under the Cathay Money Judgment by orchestrating the Unsuccessful Sale Attempt and the 2016 Transfer to move beneficial ownership of the 1847 Property from Paula to Kaliampos and/or Pistikos, and to frustrate Cathay's rights through claims that would compete with, and allegedly be superior to, Cathay's interest in the 1847 Property.

251.     The bases for the allegations in paragraph 250 are the 2016 Transfer and Unsuccessful Sale Attempt, and the underlying facts revealing those transactions to be fraudulent and/or in bad faith as set forth above, including the 2016 Transfer Badges of Fraud.

252.     26RoadAstoria, Kaliampos, and Pistikos furthered the aforementioned conspiracy and fraudulent scheme through the Assignment of Mortgage, which would enable 26RoadAstoria to hinder or delay Cathay's attempt to collect on the Cathay Money Judgment.

253.     Paula, 1847 LLC, Kaliampos, and Pistikos furthered the aforementioned conspiracy and fraudulent scheme through the 2016 Transfer, which frustrated enforcement of the Cathay Money Judgment.

254.     Upon information and belief, the 2016 Transfer was a sham designed to hinder enforcement of the Cathay Money Judgment by placing title to the 1847 Property nominally in Kaliampos's name when in fact Pistikos was the owner.

255.     The bases for the information and belief set forth in paragraph 254 above include the 2016 Transfer Badges of Fraud.

256.     As alleged in paragraphs 212 through 218 *supra*, 26RoadAstoria and Pistikos were alter egos of one another, and the corporate veil between 26RoadAstoria and Pistikos should be reverse pierced with regard to the Assignment of Mortgage, such that Pistikos is also jointly liable with 26RoadAstoria, as well as in his personal capacity.

257.     Paula, 1847 LLC, 26RoadAstoria, Kaliampos, and Pistikos knowingly participated in a fraudulent scheme to deprive Cathay of its rights as a judgment creditor.

258.     The aforementioned acts in furtherance of the conspiracy and fraudulent scheme proximately caused injury to Cathay.

259.     Cathay is entitled to recover damages against the Paula Estate, 1847 LLC, 26RoadAstoria, Kaliampos, and Pistikos in an amount to be determined at trial.

260.     Cathay is entitled to recover punitive damages against the Paula Estate, 1847 LLC, 26RoadAstoria, Kaliampos, and Pistikos, because their conduct was gross and wanton and involved high moral culpability.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

### (Unjust Enrichment)

261.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 260 above as if fully set forth herein.

262.    Kaliampos and Pistikos were unjustly enriched, by receiving through the 2016 Transfer, the full ownership interest in 1847 LLC, and with it beneficial ownership of the 1847 Property, in exchange for assuming debts far below the fair market value of the 1847 Property.

263.    Kalimapos and Pistikos were also unjustly enriched by the 2016 Transfer in that such transfer was void under the Non-Transfer Clause.

264.    Kaliampos's and Pistikos's enrichment was at Cathay's expense, in that the transfer of beneficial ownership of the 1847 Property frustrated enforcement of the Cathay Money Judgment.

265.    Equity and good conscience militate against permitting Kaliampos and Pistikos to keep the full ownership interest in 1847 LLC and beneficial ownership of the 1847 Property, because the 2016 Transfer was part of a scheme to hinder, delay, and defraud Cathay.

266.    Cathay is entitled to damages against Kaliampos and Pistikos in an amount to be determined at trial.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

### (Action to Recover Judgment)

267.    Cathay repeats and reiterates each and every allegation in paragraphs 1 through 266 above as if fully set forth herein.

268.    Paula made the 2016 Transfer in order to frustrate Cathay's attempts to collect on the Cathay Money Judgment.

#

269.     Upon information and belief, at the time of the 2016 Transfer, 1847 LLC was so dominated by Paula, and its separate identity so disregarded, such that 1847 LLC primarily transacted Paula's business rather than its own and 1847 LLC and Paula were alter egos of one another.

270.     The bases for the information and belief set forth in paragraph 269 above are:

(a)     Upon information and belief, corporate formalities for 1847 LLC were absent. The basis for this allegation includes the facts that the share certificates for 1847 LLC were never issued and no documents identified the members, officers, or shareholders of 1847 LLC;;

(b)     From the formation of 1847 LLC on or about November 23, 2015 to the closing of the 2016 Transfer on October 19, 2016, Paula was the sole member of 1847 LLC;

(c)     Upon information and belief, 1847 LLC never had any assets other than the 1847 Property;

(d)     Upon information and belief, after the 2015 Transfer, Paula continued to deposit rent checks from the rental of the 1847 Property into her personal bank account rather than that of 1847 LLC; and

(e)     The 2016 Transfer was in violation of, and void under, the Non-Transfer Clause of the 1847 LLC Operating Agreement.

271.     Paula exercised complete domination over 1847 LLC with respect to the 2015 Transfer, in that she was the sole member of 1847 LLC and the person who signed the Real Property Transfer Report therefor as the "Buyer."

272.     Paula exercised complete domination over 1847 LLC with respect to the 2016

Transfer, in that she was the sole member of 1847 LLC at the time of that transfer and the sole

person to execute the Membership Sale Agreement on behalf of the "Seller."

273.     Paula used her domination of 1847 LLC to perpetrate a fraud or wrong against

Cathay, with regard to both the 2015 Transfer and 2016 Transfer, which hindered Cathay's

ability to enforce its rights.

274.     As a result, the corporate veil between Paula and 1847 LLC should be reverse

pierced, such that 1847 LLC is also jointly liable with Paula as to the Cathay Money Judgment.

275.     Since Paula has passed away, the Paula Estate has succeeded to Paula's liabilities,

so 1847 LLC is jointly liable with the Paula Estate with respect to the Cathay Money Judgment.

276.     The Paula Estate and 1847 LLC are liable to Cathay in the amount of $455,000,

the amount of the Cathay Money Judgment, together with interest.

277.     Cathay is entitled to recover punitive damages from the Paula Estate and 1847

LLC because the conduct of Paula and 1847 LLC was gross and wanton and involved high moral

culpability.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION

#### (Interference with Collection of a Judgment)

278.     Cathay repeats and reiterates each and every allegation set forth in paragraphs 1

through 277 above as if fully set forth herein.

279.     At the time of the 2016 Transfer, Paula, Kaliampos, and Pistikos knew that the

Cathay Money Judgment had been entered.

280.     Upon information and belief, Paula, Kaliampos, and Pistikos, conspiring with

1847 LLC, effectuated the 2016 Transfer with the intent to hinder Cathay's enforcement of the

Cathay Money Judgment.

281.     At the time of the Cathay Money Judgment, Paula did not have any substantial assets, apart from her ownership of 1847 LLC, with which she could have satisfied the Cathay Money Judgment.

282.     The 2016 Transfer transferred the ownership of 1847 LLC, together with beneficial ownership of the 1847 Property, from Paula to Kaliampos as undisclosed agent for Pistikos, which hindered, and was intended to hinder, Cathay from enforcing the Cathay Money Judgment.

283.     No part of the Cathay Money Judgment has been satisfied.

284.     Paula continued to collect rent from the 1847 Property Tenants for months after the 2016 Transfer closed, and those tenants were not informed of the transfer of record to Kaliampos for months after the transaction.

285.     Neither Paula, Kaliampos, nor Pistikos, nor anyone else, filed required tax documents in connection with the 2016 Transfer.

286.     Cathay is entitled to damages against Kaliampos, Pistikos, and the Paula Estate in an amount to be determined at trial.

287.     Cathay is entitled to recover punitive damages against Kaliampos, Pistikos, and the Paula Estate because the conduct of Kaliampos, Pistikos, and Paula was gross and wanton and involved high moral culpability.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

### (Violation of Restraining Notice)

288.     Cathay repeats and reiterates each and every allegation set forth in paragraphs 1 through 287 above as if fully set forth herein.

289.     On or about August 27, 2016, the Restraining Notice was duly served on Paula.

290.    The Restraining Notice precluded Paula from selling or transferring any property in which she had an interest, subject to exceptions which are not applicable to the 2016 Transfer.

291.    In the 2016 Transfer on October 19, 2016, when Paula knew of the Restraining Notice and it was in effect, Paula conveyed her interest in 1847 LLC to Kaliampos and/or Pistikos.

292.    Paula made the 2016 Transfer in disregard of, and in violation of, the Restraining Notice.

293.    As a result of the Restraining Notice's violation, the Cathay Money Judgment remains unsatisfied.

294.    As a result of the wrongful act of Paula, to wit, the violation of the Restraining Notice, Cathay has been damaged, in that such violation conveyed the 1847 Property against which Cathay could have executed the Cathay Money Judgment.

295.    Cathay is entitled to recover from the Paula Estate damages in an amount to be determined at trial.

WHEREFORE, Cathay demands that the Court enter judgment as follows:

(a)     On the First Cause of Action, adjudging the 2014 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting aside such conveyance, and restoring title in the 1847 Property to its preconveyance status;

(b)     On the Second Cause of Action, adjudging the 2014 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting aside such conveyance, and restoring title in the 1847 Property to its preconveyance status;

(c)     On the Third Cause of Action, awarding Cathay damages against George and the Paula Estate in an amount to be determined at trial;

(d)     On the Fourth Cause of Action, adjudging the 2015 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting such conveyance, and restoring title in the 1847 Property to its preconveyance status;

(e)     On the Fifth Cause of Action, adjudging the 2015 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting aside such conveyance, and restoring title in the 1847 Property to its preconveyance status;

(f)     On the Sixth Cause of Action, awarding Cathay damages against the Paula Estate and 1847 LLC in an amount to be determined at trial;

(g)     On the Seventh Cause of Action, adjudging the 2016 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting aside such conveyance, and restoring title to the ownership interest in 1847 LLC to its preconveyance status;

(h)     On the Eighth Cause of Action, adjudging the 2016 Transfer to be fraudulent, null, and void as to Cathay, vacating and setting aside such conveyance, and restoring title to the ownership interest in 1847 LLC to its preconveyance status;

(i)     On the Ninth Cause of Action, awarding Cathay damages against the Paula Estate, Kaliampos, and Pistikos in an amount to be determined at trial;

(j)     On the Tenth Cause of Action, awarding reasonable attorney's fees in the instant action as against the Paula Estate, George, 1847 LLC, Kaliampos, and Pistikos;

(k)     On the Eleventh Cause of Action, a declaration adjudging that 26RoadAstoria is not a bona fide encumbrancer with regard to the Capital-26RoadAstoria Transactions, that the Capital-26RoadAstoria Transactions are fraudulent, null, and void, and be discharged of record, that the Capital Mortgage is merged, extinguished, null and void and of no effect, and adjudging that 26RoadAstoria,

and every person claiming under it, be barred from all claims to an estate or interest in the 1847 Property; or, in the alternative, that any rights of 26RoadAstoria, and any other person claiming under it, to the 1847 Property under the Capital-26RoadAstoria Transactions, are subordinate to Cathay's interests in the 1847 Property;

(l)      On the Twelfth Cause of Action, a declaration adjudging that Aphis is not a bona fide encumbrancer with regard to the Aphis Transactions, that the Aphis Transactions are fraudulent, null, and void, and discharged of record, and that Aphis, and every person claiming under it, be barred from all claims to an estate or interest in the 1847 Property; or, in the alternative, that any rights of Aphis, and any other person claiming under it, to the 1847 Property under the Aphis Transactions, are subordinate to Cathay's interests in the 1847 Property;

(m)      On the Thirteenth Cause of Action, awarding Cathay damages against the Paula Estate, 1847 LLC, 26RoadAstoria, Kaliampos, and Pistikos in an amount to be determined at trial, together with punitive damages;

(n)      On the Fourteenth Cause of Action, awarding Cathay damages against Kaliampos and Pistikos in an amount to be determined at trial;

(o)      On the Fifteenth Cause of Action, awarding Cathay damages against the Paula Estate and 1847 LLC in the amount of $455,000, together with interest and punitive damages;

(p)      On the Sixteenth Cause of Action, awarding Cathay damages against Kaliampos, Pistikos, and the Paula Estate, including punitive damages, in an amount to be determined at trial; and

#

(q)     On the Seventeenth Cause of Action, awarding Cathay damages against the Paula

Estate, including punitive damages, in an amount to be determined at trial;

(r)     Together with attorneys' fees, interest, costs and disbursements of this action, and

with such other, further, and different relief which as to the Court may seem just

and proper.

Dated:  Mineola, New York
        November 9, 2020

                              Yours, etc.

                              LAW OFFICES OF MICHAEL A. HASKEL

                              By:     s/Brandon M. Zlotnick
                                      Brandon M. Zlotnick
                                      Attorneys for Plaintiff Cathay Bank
                                      167 Willis Avenue
                                      Mineola, NY 11501-2621
                                      Phone: (516) 294-0250
                                      Email: haskelesq2@gmail.com

#

Case No. 17-CV-3551 (NG) (SIL)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CATHAY BANK,

Plaintiff,

-against-

JOSE ANTONIO BONILLA and JULIO CESAR MONTALVO, as Administrators for the
Estate of PAULA MALLIARAKIS, deceased, pursuant to Limited Letters of Administration,
GEORGE MALLIARAKIS a/k/a GEORGIOS MALLIARAKIS, 26ROADASTORIA LLC,
APHIS REALTY, INC., 1847 ASTORIA LLC, DIONYSIOS KALIAMPOS, and DIMITRIOS
PISTIKOS,

Defendants.

---

## SECOND AMENDED COMPLAINT

---

LAW OFFICES OF MICHAEL A. HASKEL
Attorneys for Plaintiff
167 Willis Avenue
Mineola, NY 11501-2621
Phone: (516) 294-0250
Fax: (516) 294-0854 *(not for service)*
Email: haskelesq2@gmail.com