UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CATHAY BANK,

                Plaintiff,

-against-

JOSE ANTONIO BONILLA and JULIO CESAR MONTALVO, as Administrators for the Estate of PAULA MALLIARAKIS, deceased, GEORGE MALLIARAKIS, a/k/a GEORGIOS MALLIARAKIS, 26ROADASTORIA LLC, ALPHA REALTY, INC., APHIS REALTY, INC., 1847 ASTORIA LLC, DIONYSIOS KALIAMPOS, and DIMITRIOS PISTIKOS,

                Defendants.
_____

Case No.:
1:17-cv-3551 (NG) (SIL)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENANTS 26ROADASTORIA LLC'S AND APHIS REALTY INC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

GANFER SHORE LEEDS & ZAUDERER LLP
    Mark A. Berman
    Dawn M. Wilson
    Jason Ganfer
360 Lexington Avenue, 14th Floor
New York, New York 10017
(212) 922-9250

*Attorneys for Defendant 26RoadAstoria LLC and Aphis Realty, Inc. on the First, Second, and Eleventh Causes of Action and for Defendant Aphis Realty, Inc. on the First, Second, Fourth, Fifth, and Twelfth Causes of Action*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 3

    A.    Introduction ............................................................................................................. 3

    B.    George and Paula Enter into a Separation Agreement ........................................... 3

    C.    Plaintiff Files a Foreclosure Action against the Baldwin Property ........................ 4

    D.    George Transfers the Astoria Property to Paula in Accordance with the Separation Agreement .................................................................................... 4

    E.    Paula Twice Files for Bankruptcy but the Actions Are Dismissed ........................ 5

    F.    Paula Brings a Federal Lawsuit against George and Cathay .................................. 5

    G.    Paula Transfers the Astoria Property to a Newly-Created LLC in Order to Obtain a Loan from a Private Equity Lender and Enters into the Capital Mortgage ........................................................................................................................ 5

    H.    Title Insurance Is Issued on the Capital Mortgage after Industry Standard Due Diligence Conducted ..................................................................................... 6

    I.    Proceeds of the $600,000 Loan Are Appropriately Used to Pay off Prior Loan and Taxes ......................................................................................................... 7

    J.    Paula Files an Involuntary Bankruptcy Petition Against George ........................... 8

    K.    Aphis Makes a Small Loan to the LLC .................................................................. 8

    L.    Pistikos Tries to Purchase the Astoria Property ..................................................... 8

    M.    Plaintiff Obtains a Judgment against Paula ............................................................ 8

    N.    Pistokos' Continued Interest in the Property .......................................................... 9

    O.    Cathay Obtains a Judgment against George .......................................................... 9

ARGUMENT ................................................................................................................................... 10

I.    STANDARD OF REVIEW ................................................................................................... 10

II.    26ROAD IS ENTITLED TO AN EQUITABLE LIEN SUPERIOR TO PLAINTIFF'S JUDGMENTS .................................................................................................. 11

CONCLUSION ................................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Pages**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................................................... 10

*Chemical Bank v. Meltzer*,
   93 N.Y.2d 296 (1999) ................................................................................................................ 11

*D'Amico v. City of N.Y.*,
   132 F.3d 145 (2d Cir. 1998) ....................................................................................................... 10

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*,
   691 F.3d 134 (2d Cir. 2012) ....................................................................................................... 10

*Elwood v. Hoffman*,
   61 A.D.3d 1073 (3rd Dep't 2009) ........................................................................................ 11, 12

*Fed. Fin. Co. v. Levine*,
   248 A.D.2d 25 (2d Dep't 1998) .................................................................................................. 12

*Filan v. Dellaria*,
   144 A.D.3d 967 (2d Dep't 2016) .......................................................................................... 13, 14

*Great Eastern Bank v. Chang*,
   227 A.D.2d 589 (2d Dep't 1996) ................................................................................................ 11

*King v. Pelkofski*,
   20 N.Y.2d 326 (1967) ........................................................................................................... 12, 13

*Lucia v. Goldman*,
   145 A.D.3d 767 (2d Dep't 2016) .......................................................................................... 11, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ........................................................... 10

*Redd v. N.Y. Div. of Parole*,
   678 F.3d 166 (2d Cir. 2012) ....................................................................................................... 10

*U.S. Bank N.A. v. Denisco*,
  96 A.D.3d 1659 (4th Dep't 2012) .............................................................................................. 12

*United States v. Baran*,
  996 F.2d 25 (2d Cir. 1993) ........................................................................................................ 11

**Statutes**

N.Y. U.C.C. Law § 3-201(1) ............................................................................................................ 12

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 10

Defendants 26RoadAstoria LLC ("26Road") and Aphis Realty, Inc. ("Aphis") (collectively, the "Mortgagees") respectfully submit this memorandum of law in support of their motion for partial summary judgment, pursuant to F.R.C.P. 56, on their Third Affirmative Defense to the Second Amended Complaint ("Complaint" or "Compl.") of Cathay Bank ("Cathay" or "Plaintiff") on equitable subrogation. Accompanying this memorandum of law is the Declaration of Dawn M. Wilson, Esq., dated February 11, 2022, the Affidavit of Steven Zeikowitz, sworn to February 10, 2022, and the Mortgagees' Statement of Undisputed Material Facts, dated February 11, 2022.[1]

## PRELIMINARY STATEMENT

The Mortgagees bring this motion for summary judgment on their Third Affirmative defense for an equitable lien pursuant to the doctrine of equitable subrogation, which applies when the funds of a mortgage are used to discharge or pay off a prior lien on the property, in order to prevent unjust enrichment by subrogating the mortgagee to the position of the discharged lienholder.

The Mortgagees hold a first and second mortgage on real property located at 18-47 26th Road, Astoria, New York, which is a three-unit rental property (the "Astoria Property"). Plaintiff is a judgment creditor of George and Paula Malliarakis,[2] who previously owned the Astoria Property. Plaintiff seeks to set aside two transfers of the Astoria Property prior to its judgments as alleged fraudulent conveyances and requests a declaratory judgment that the Mortgagees are

---

[1] All citations to the record in this memorandum of law are to the Statement of Undisputed Material Facts ("SMF").

[2] Paula is deceased and the administrators of her estate have replaced her as defendants in this action.

1

not *bona fide* encumbrancers of the Astoria Property, as well as the nullification of their respective mortgages.

Specifically, Plaintiff seeks to set aside a 2014 transfer of the Astoria Property from George and Paula as tenants in common to Paula alone. Plaintiff contends that this was a fraudulent conveyance because Plaintiff filed a foreclosure action against a *different* property owned by George and Paula in another county the month before the 2014 transfer on a mortgage for which George was the guarantor. And, according to Plaintiff, it should have been obvious to George that there would be a deficiency judgment against him in the foreclosure procedure of the other property. However, the 2014 transfer of the Astoria Property to Paula was made pursuant to a written Separation Agreement between George and Paula, in which George agreed to transfer the Astoria Property to Paula and Paula agreed to forego any interest in several other properties owned by George.

Plaintiff also seeks to set aside a 2015 transfer of the Astoria Property from Paula to a limited liability company (1847 Astoria LLC), of which Paula was the sole member. Such transfer was done as a condition to obtain a loan from a private equity lender, which loan would be secured by the Astoria Property, a common occurrence in the private equity lending business. The value of the Astoria Property was more than adequate to secure such $600,000 loan, which loan was partially used to pay off an existing mortgage and taxes on the Astoria Property. This is the transaction which gives rise to the Mortgagee's defense of equitable subrogation. The $600,000 mortgage was assigned to 26Road in 2016.

Even if Plaintiff were successful in reversing these conveyances and nullifying the mortgages, which it will not be, 26Road, the first position mortgagee, as a matter of law, has an equitable lien against the Astoria Property under the doctrine of equitable subrogation because

2

$312,576.67 of the proceeds of the $600,000 loan payed off a prior mortgage lien on the Astoria Property and $8,816.73 of the proceeds of the loan paid taxes owed on the Astoria Property.

Plaintiff benefitted from these payments, because if the $600,000 loan had not been made, then the lien and taxes would still be outstanding against the Astoria Property and would need to be satisfied before Plaintiff could use any proceeds from the foreclosure sale of the Astoria Property to satisfy its judgments.

Should Plaintiff succeed in nullifying the mortgages, the equitable lien would be superior to Plaintiff's judgments.

Plaintiff has no defense to this motion for partial summary judgment.

## STATEMENT OF FACTS

**A.     Introduction**

George and Paula, although never legally married, lived together as a couple for over 30 years, with Paula going so far as to change her surname to "Malliarakis." (SMF ¶ 1). As of 2010, George and Paula owned the Astoria Property as tenants in common. (SMF ¶ 2). The Astoria Property is a rental property. (SMF ¶ 3).

George and Paula also owned their personal residence together in Baldwin, New York (the "Baldwin Property"), and George owned a number of other properties. (SMF ¶ 4). George and Paula gave a mortgage on the Baldwin Property to Asia Bank, Plaintiff's predecessor in interest, upon which they eventually defaulted. (SMF ¶ 5).

**B.     George and Paula Enter into a Separation Agreement**

In March, 2011, George and Paula separated from each other and entered into a written agreement to memorialize that separation and divide the assets they had accumulated over their 30 years together (the "Separation Agreement"). (SMF ¶ 6). Among other things, George agreed to

3

convey his interest in the Astoria Property to Paula, and Paula agreed to forgo any claims she might have had to other real property owned by George. (SMF ¶ 7). The Separation Agreement was prepared by George's attorney, Jim Demetrio. (SMF ¶ 8).

### C. Plaintiff Files a Foreclosure Action against the Baldwin Property

In January, 2014, Plaintiff's predecessor in interest filed the foreclosure action seeking to foreclose the mortgage on the Baldwin Property (the "Foreclosure Action"). (SMF ¶¶ 9, 12). The Foreclosure Action sought a deficiency judgment against George. (SMF ¶ 11). George was served with the Foreclosure Action on January 30, 2014. (SMF ¶ 10).

### D. George Transfers the Astoria Property to Paula in Accordance with the Separation Agreement

On February 28, 2014, George and Paula transferred the Astoria Property to Paula (the "2014 Transfer"). (SMF ¶ 13). George testified that the 2014 Transfer was done pursuant to the Separation Agreement. SMF ¶ 14).

Plaintiff challenges the 2014 Transfer as a fraudulent conveyance based on George's purported insolvency and alleged lack of consideration. Plaintiff will argue that the Separation Agreement did not provide George with any consideration because he owned the other properties alone and as an unmarried partner, according to Plaintiff, Paula had no legal claim to these properties under New York Law. Plaintiff will also argue that George and Paula did not fully perform under the agreement and that these breaches provided George with a basis, of which he did not avail himself, to rescind the agreement. These arguments are not relevant to the Mortgagees' motion for summary judgment seeking an equitable lien.

4

### E. Paula Twice Files for Bankruptcy but the Actions Are Dismissed

On April 13, 2015, and again on August 31, 2015, Paula filed for bankruptcy. (SMF ¶¶ 15 17). Both of these actions were dismissed, on July 24, 2015, and November 2, 2015, respectively. (SMF ¶¶ 16, 18).

### F. Paula Brings a Federal Lawsuit against George and Cathay

On or about August 30, 2015, Paula brought an action in the United States District Court, Eastern District of New York, entitled *Paula Malliarakis v. George Malliarakis et al.*, No. 15-cv-05060 (the "Federal Action"). (SMF ¶ 190). Cathay was also named as a defendant. (SMF ¶ 20). On February 4, 2016, Cathay asserted two counterclaims for money damages against Paula on a variety of grounds. (SMF ¶ 21).

### G. Paula Transfers the Astoria Property to a Newly-Created LLC in Order to Obtain a Loan from a Private Equity Lender and Enters into the Capital Mortgage

On December 2, 2015, Paula, through a newly-created limited liability company, 1847 Astoria LLC, to which she transferred the Astoria Property (the "2015 Transfer"), borrowed $600,000 from non-party Fifth Avenue Capital LLC ("Capital"), secured by a mortgage on the Astoria Property (the "Capital Mortgage").[3] (SMF ¶ 22). The 2015 Transfer of the Astoria Property to this new LLC entity was a requirement of Capital as a condition to entering into the loan, which was, according to Mortgagees' lending expert, Marc Schulder, a standard practice for private equity lenders such as Capital. (SMF ¶ 23). Paula was the sole member of the LLC, therefore, there was no change in beneficial ownership of the Astoria Property as a result of the transfer. (SMF ¶24).

---

[3] As explained below, the Capital Mortgage was assigned to 26Road in 2016.

Prior to entering into the Capital Mortgage, Capital conducted due diligence, as appropriate for the transaction, on Paula and the Astoria Property. (SMF ¶ 25). Capital obtained a credit report for Paula, which showed that she had a low credit score. (SMF ¶ 26). Despite Paula being a risky borrower, Mr. Schulder opined that the loan was entirely appropriate under industry standards for a private equity lender because the equity in the Astoria Property was more than adequate to cover the loan and the terms of the loan made economic sense for the lender. (SMF ¶ 27).

As part of the due diligence on the loan, Capital received a copy of the Separation Agreement between George and Paula that provided the basis for the 2014 Transfer. (SMF ¶ 28). As discussed below, the 2014 Transfer was reviewed by the title company as part of its title search on the Astoria Property. (SMF ¶ 33).

In addition, Capital learned that Paula had twice filed for bankruptcy, both of which were dismissed prior to its loan. (SMF ¶ 29). The Notice of Dismissal were the only documents related to Paula's bankruptcy petitions in Capital's underwriting files. (SMF ¶ 30). The Mortgagees' lending expert opined that dismissed bankruptcies are not relevant to a decision to make a loan, as they could not affect the collateral. (SMF ¶ 31).

According to Plaintiff, if Capital had required Paula to complete more detailed loan application or reviewed the bankruptcy filings – which it undisputedly was not required to do under industry standards and did not do, it would have learned about Paula's foreclosure action, significant debt, negative monthly income owing Plaintiff $9,000 per month, and alleged pattern of conduct to avoid the rights of her creditors.

**H.     Title Insurance Is Issued on the Capital Mortgage after Industry Standard Due Diligence Conducted**

In connection with the Capital Mortgage, Fidelity's Garden City Agency office issued a title insurance policy to Capital. (SMF ¶ 32). In issuing that policy, Fidelity noted and investigated

6

the 2014 Transfer because it was for "no consideration." (SMF ¶ 33). As reflected in Fidelity's file notes, Fidelity spoke to George's lawyer, who explained that the transfer was pursuant to the written Separation Agreement. (SMF ¶ 35). The Mortgagees' title expert, Joseph Friedman, who has over 65 years' experience in the title industry, opined that the issuance of the title insurance policy was appropriate based on Fidelity's investigation of the 2014 Transfer. (SMF ¶ 36). He also testified that, in his opinion, there was fair consideration for the 2014 Transfer under the Separation Agreement where Paula agreed to not pursue any interest in George's other properties as a judge could find she had an equitable interest in such properties notwithstanding that they were not formally married. (SMF ¶ 37). The 2014 Transfer was thus omitted as an exception to the insurance policy for the Capital Mortgage. (SMF ¶ 38).

**I.      Proceeds of the $600,000 Loan Are Appropriately
        Used to Pay off Prior Loan and Taxes**

Part of the proceeds of the $600,000 loan were used to pay off a $312,576.67 existing mortgage lien on the Astoria Property. (SMF ¶ 39). This lien was the balance of a reverse mortgage taken out by Paula. (SMF ¶ 40). Fidelity obtained a copy of the "pay-off" letter to Paula from Live Well Financial, the mortgagor. (SMF ¶ 41). The letter acknowledged that "Live Well Financial received payment in full for [Reverse Mortgage Loan #1188858] on 12/03/2015." (SMF ¶ 42). In addition, a Satisfaction of Mortgage from Live Well Financial was recorded for Reverse Mortgage Loan #1188858 in the Automated City Register Information System ("ACRIS"). (SMF ¶ 43). ACRIS is public records database used to record deeds, mortgages, and other instruments regarding specific parcels of real property in New York City. (SMF ¶ 44).

Additional proceeds of the $600,000 loan were used to pay $8,816.73 in taxes owed on the Astoria Property. (SMF ¶ 45).

7

### J.   Paula Files an Involuntary Bankruptcy Petition Against George

On January 19, 2016, Paula filed an involuntary bankruptcy petition against George. (SMF ¶ 46). That action was dismissed on May 11, 2016. (SMF ¶ 47).

### K.   Aphis Makes a Small Loan to the LLC

On March 1, 2016, the LLC, still owned by Paula, borrowed $75,000 from Aphis, also secured by a mortgage on the Astoria Property. (SMF ¶ 48).[4] Defendant Dimitrios Pistikos is the principal of Aphis. (SMF ¶50).

### L.   Pistikos Tries to Purchase the Astoria Property

By March 30, 2016, Pistikos (principal of Aphis and 26RoadAstoria) was looking to purchase the Astoria Property from 1847 Astoria LLC for $875,000 (by assuming the existing mortgages plus $200,000). (SMF ¶ 51). Before the Aphis loan, Pistikos had no prior connection to Paula or George. (SMF ¶ 52). He was introduced to the opportunity by a real estate broker. (SMF ¶ 53).

### M.   Plaintiff Obtains a Judgment against Paula

On May 3, 2016, Plaintiff obtained a judgment of $455,000 against Paula in the Federal Action. (SMF ¶ 54). The judgment was filed in Queens County on May 11, 2016. (SMF ¶ 55). This judgment caused the title agency for the potential transaction to decline to provide a title insurance policy and led to the termination of the proposed sale of the Astoria Property to Pistikos. (SMF ¶ 56).

---

[4]   The Aphis Mortgage contains an error – naming the lender and mortgagee as "Alpha Realty," and entity that does not exist. (SMF ¶ 49).

N. **Pistokos' Continued Interest in the Property**

Then Pistikos, through 26Road, sought to purchase the Capital Mortgage. (SMF ¶ 57). On August 19, 2016, Capital assigned the Capital Mortgage to 26Road Astoria for $662,500 (the "Assignment"). (SMF ¶ 58). The Capital Mortgage was in default at the time of the Assignment. (SMF ¶ 59). Plaintiff alleges that Pistikos or his agents were aware of the judgment against Paula at the time of the Assignment.

Following the acquisition of the Capital Mortgage, Pistikos remained interested in acquiring the Astoria Property. (SMF ¶ 60). He arranged to acquire 1847 Astoria LLC from Paula pursuant to a Membership Interest Sale Agreement on October 19, 2016 (the "2016 Transfer"). (SMF ¶ 61). In addition to assuming the mortgages, Pistikos also paid Paula $80,000 in cash. (SMF ¶ 62). Although Pistikos funded the acquisition of the LLC, he had his "nephew,"[5] Dionysius Kaliampos, enter into the Sale Agreement. (SMF ¶ 62). Pistikos and Kaliampos testified that this was done because Kaliampos was interested in getting into the real estate business and was supposed to pay Pistikos back. (SMF ¶ 64). This lawsuit was instituted shortly after that transaction, souring Kaliampos on real estate. (SMF ¶¶ 65, 66). Pistikos has thereafter managed the Astoria Property and collected rents. (SMF ¶ 67).

O. **Cathay Obtains a Judgment against George**

On December 12, 2016, Cathay obtained the judgment against George in the amount of $793,294. (SMF ¶ 68).

---

[5] They are not actually related by blood but have described their relationship as such. (SMF ¶ 63).

9

# ARGUMENT

## I. STANDARD OF REVIEW

Summary judgment is proper where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." *Id*.

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id*. at 324; *see also Anderson*, 477 U.S. at 256-57. The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

## II. 26ROAD IS ENTITLED TO AN EQUITABLE LIEN SUPERIOR TO PLAINTIFF'S JUDGMENTS

Pursuant to the doctrine of equitable subrogation, 26Road has an equitable lien against the Astoria Property by virtue of the fact that a portion of the $600,000 Mortgage, which it took by assignment from Capital, paid off an existing lien on the Astoria Property.

Equitable subrogation is an equitable principal the purpose of which is "to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full." *Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 304 (1999). The doctrine of equitable subrogation is applicable where, as here, a lender for valuable consideration has made a mortgage loan, with the proceeds of such loan being used, in whole or in part, to discharge an existing lien. *See, e.g., Great Eastern Bank v. Chang*, 227 A.D.2d 589, 589 (2d Dep't 1996) ("Where the funds of a mortgage are used to discharge a prior lien upon the property of another, the doctrine of equitable subrogation applies to prevent unjust enrichment by subrogating the mortgagee to the position of the senior lienholder"); *United States v. Baran*, 996 F.2d 25, 29 (2d Cir. 1993) (remanding action to District Court to consider equitable subrogation).

A lender is entitled to an equitable lien under the doctrine of equitable subrogation even where there has been, or there is alleged to have been, fraud or forgery in the chain of title. *See, e.g., Lucia v. Goldman*, 145 A.D.3d 767, 769 (2d Dep't 2016) (finding that although the mortgage was void because the mortgagee had constructive knowledge of the fraud, the Supreme Court properly imposed an equitable lien against the premises for the portion of the mortgage proceeds which was used to satisfy the prior mortgage).

In *Elwood v. Hoffman*, 61 A.D.3d 1073 (3rd Dep't 2009), Delta gave an $85,000 loan secured by a mortgage on real property. *Id.* at 1074. A portion of the proceeds of that loan were

11

used to pay off an existing loan. *Id.* However, at the time of the Delta loan, there was a notice of pendency filed against the property, which was not discovered by Delta's title agent. *Id.* HSBC subsequently acquired the mortgage by assignment. *Id.* The Appellate Division held that HSBC was entitled to an equitable lien on the property even though Delta had "constructive notice" of the notice of pendency. *Id.* at 1075; *see also King v. Pelkofski*, 20 N.Y.2d 326, 333 (1967) (the presence of constructive knowledge does not render the doctrine of equitable subrogation inapplicable).

Here, 26Road, as an assignee of the $600,000 Mortgage, "stepped into the shoes" of Capital, and thus may pursue the same remedies and defenses that would have been available to it. N.Y. U.C.C. Law § 3-201(1); *see also Fed. Fin. Co. v. Levine*, 248 A.D.2d 25, 28 (2d Dep't 1998); *accord U.S. Bank N.A. v. Denisco*, 96 A.D.3d 1659, 1661 (4th Dep't 2012) ("It is well settled that 'an assignee steps into the shoes of its assignor' and 'may pursue the same remedies as would have been available to the assignor'").

A portion of the Capital loan paid off an existing lien on the Astoria Property in the amount of $312,576.67 and taxes in the amount of $8,816.73, for a total of $321,393.50. *See King*, 20 N.Y.2d at 334 (mortgagee also entitled to equitable lien for taxes paid from proceeds of loan). If Plaintiff prevails in its primary case – *i.e.*, setting aside the 2014 and 2015 Transfers as fraudulent conveyances and/or nullifying the $600,000 Mortgage, which it will not, regardless, Plaintiff will have benefitted by the Capital Mortgage paying off this lien and taxes, including all the interest that would have continued to accrue on the pre-existing lien. Plaintiff would be "unjustly enriched by the retention of the benefit thus conferred" thus 26Road "is entitled to be subrogated to the rights of the [prior] encumbrance." *Id.* at 333-334.

Even if the 2014 and 2015 Transfers are set aside as fraudulent conveyances and the Mortgagees are found to have had constructive knowledge of that fraud, 26Road is still entitled to an equitable lien. A lender is entitled to an equitable lien under the doctrine of equitable subrogation even where there has been, or there is alleged to have been, fraud or forgery in the chain of title. *See, e.g., Lucia*, 145 A.D.3d at 769 (finding that although the mortgage was void because the mortgagee had constructive knowledge of the fraud, the Supreme Court properly imposed an equitable lien against the premises for the portion of the mortgage proceeds which was used to satisfy the prior mortgage); *see also King*, 20 N.Y.2d at 333 (the presence of constructive knowledge does not render the doctrine of equitable subrogation inapplicable).

Here, Plaintiff can produce no evidence that Capital had actual knowledge that the 2014 or 2015 Transfers were fraudulent. *See Filan v. Dellaria*, 144 A.D.3d 967, 973 (2d Dep't 2016) (no evidence that mortgagee knew that satisfactions of prior mortgages had been forged). At best, Plaintiff may seek to prove Capital's constructive or inquiry notice of the fraud, which the Mortgagees contest, but such alleged defense provides no legal basis to deny the Mortgagees' motion. Thus, even if this Court found that Capital is "charged with knowledge of information which would have caused a prudent lender to inquire as the circumstances of the transaction," Capital, as a matter of law, is still entitled to an equitable lien. *Lucia*, 145 A.D.3d at 769.

Finally, Plaintiff is likely to argue in opposition to this motion that Pistikos' and 26Roads' own purported "bad faith" precludes it from benefitting from equitable subrogation, such as paying Paula additional cash or having Kaliampos sign the Sale Agreement instead of Pistikos. Such argument is a legal non-starter. In order to deny a party equitable relief pursuant to the doctrine of unclean hands, the supposed offending party must be "guilty of immoral, unconscionable

13

conduct directly related the subject matter of the litigation and which conduct injured the party seeking to invoke the doctrine." *Id.*; *see also Filan*, 144 A.D.3d at 973.

Here, there is no evidence in the record that 26Road's or its principal's supposed bad acts rose to the level of immoral or unconscionable conduct. Second, 26Road steps into the shoes of Capital. Therefore, it is the conduct of Capital at the time of the origination of the $600,000 Mortgage that is relevant, and there is no evidence in the record that Capital's conduct was immoral or unconscionable. Nor, if the Court should find that Capital should have more thoroughly inquired into the circumstances surrounding the transaction, which the Mortgagees contest, that still, as a matter of law, would not rise to the level of immoral or unconscionable conduct. *Id.* Finally, if the Court should set aside the 2014 and 2015 Transfers and void the mortgagees, then Plaintiff would be restored to its original position and cannot "demonstrate that they were injured" by Capital's (or 26Road's) "alleged misconduct." *Id.*[6]

---

[6] Any other purported "bad faith" acts by 26Road or Pistkos that Plaintiff may raise in opposition to this motion do not matter for the reasons just discussed.

14

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Mortgagees motion for partial summary judgment on their Third Affirmative Defense that 26Road has an equitable lien in the amount of $321,139.40 superior to Plaintiff's judgments.

Dated: New York, New York
February 11, 2022

                                            GANFER SHORE LEEDS & ZAUDERER LLP

                                            By: _____/s/_____
                                                  Mark A. Berman
                                                  Dawn M. Wilson
                                                  Jason Ganfer
                                          360 Lexington Avenue, 14th Floor
                                          New York, New York 10017
                                          (212) 922-9250

                                          *Attorneys for Defendant 26RoadAstoria LLC on the First, Second, and Eleventh Causes of Action and for Defendant Aphis Realty, Inc. on the First, Second, Fourth, Fifth, and Twelfth Causes of Action*