Case No. 17-CV-3551 (NG) (SIL)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CATHAY BANK,

Plaintiff,

-against-

JOSE ANTONIO BONILLA and JULIO CESAR MONTALVO, as Administrators for the Estate of PAULA MALLIARAKIS, deceased, pursuant to Limited Letters of Administration, GEORGE MALLIARAKIS a/k/a GEORGIOS MALLIARAKIS, 26ROADASTORIA LLC, APHIS REALTY, INC., 1847 ASTORIA LLC, DIONYSIOS KALIAMPOS, and DIMITRIOS PISTIKOS,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

LAW OFFICES OF MICHAEL A. HASKEL
Attorneys for Plaintiff
167 Willis Avenue
Mineola, NY 11501-2621
Phone: (516) 294-0250
Fax: (516) 294-0854 *(not for service)*
Email: haskelesq2@gmail.com

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ..........................................................................................1

JURISDICTION ...................................................................................................................1

STANDARD OF REVIEW ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT .....................................................................................................................12

    INTRODUCTION……………………………………………………………………… 12

    POINT I:      THE 2014, 2015, AND 2016 TRANSFERS SHOULD BE
                       INVALIDATED ..................................................................12

    A.     THE 2014 TRANSFER SHOULD BE INVALIDATED………………………… 12

        1. The 2014 Transfer Was Actually Fraudulent (First Cause of Action)………… .12

        2. There Was No Antecedent Debt..……………………………………………… 15

        3. 2014 Transfer Was Constructively Fraudulent (Second Cause of Action)…… 18

           a.     The 2014 Transfer Was Constructively Fraudulent Under DCL § 273….19#

  #     #     #(i)  The 2014 Transfer Occurred During, or Caused, George's

                  Insolvency………………………………………………………… 19

               (ii) The 2014 Transfer Was Made Without Fair Consideration…………19

               (iii) The 2014 Transfer Lacked Good Faith……………………………… 20

           b.     The 2014 Transfer Was Constructively Fraudulent Under DCL § 273-a  22
           c.     The 2014 Transfer Was Constructively Fraudulent under DCL § 275… 22

    B.     The 2015 Transfer Should Be Invalidated………………………………………22

        1. The 2015 Transfer Was Actually Fraudulent (Fourth Cause of Action)……… 23

        2. The 2015 Transfer Was Constructively Fraudulent Under § 275 (Fifth Cause of
  Action)……………………………………………………………………………… 23

C.      The 2016 Transfer Should Be Invalidated…………………………………………24

     1.      The 2016 Transfer Was an Actually Fraudulent Conveyance Under § 276 (Seventh Cause of Action)……………………………………………24

     2.      The 2016 Transfer Was Constructively Fraudulent (Eighth Cause of Action)……………………………………………………………………… 25

     a.      The 2016 Transfer Was Constructively Fraudulent Under § 273……….25

         (i)     Paula Was Insolvent as of, or Rendered Insolvent by, the 2016 Transfer…………………………………………………………………..25

         (ii)    The 2016 Transfer Was Not Made in Good Faith……………….27

########3.      The 2016 Transfer Should Be Voided as Violating NY's LLC Law……27

     4.      The 2016 Transfer was Constructively Fraudulent Under DCL § 273-a . 27

     5.      The 2016 Transfer was Constructively Fraudulent Under DCL § 275…..28

POINT II: CATHAY IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS TO INVALIDATE THE CAPITAL MORTGAGE AND APHIS MORTGAGE

     A.      General Legal Principles Relating to Bad Faith Property Encumbrancing…….. 28#

     B.      26 LLC Is Not a Good Faith Encumbrancer Because Capital, Its Assignor, Was Not a Good Faith Encumbrancer…………………………………………….. 30

     C.      26 LLC Acted in Bad Faith, and Loses Any Lien It Might Have Otherwise Had Through Its Assignor………………………………………………………… 31

     D.      Aphis Is a Bad Faith Encumbrancer………………………………………… 32

POINT III: SUMMARY JUDGMENT SHOULD BE GRANTED ON ITS CLAIM FOR FRAUDULENT SCHEME TO DEPRIVE CATHAY OF ITS RIGHTS AS CREDITOR……. 33

POINT IV:   CATHAY IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR ATTORNEY FEES ARISING FROM DEFENDANTS' ACTUALLY FRAUDULENT CONVEYANCES………………………………………………………………… 34

CONCLUSION…………………………………………………………………………..34

## **TABLE OF AUTHORITIES**

**Cases**

*839 Cliffside Avenue LLC v. Deutsche Bank Nat'l Trust Co*., No. 15-CV-4516 (SIL), 2018 WL 4608198, at *7 (E.D.N.Y. Sept. 25, 2018)........................................................................................26

*89 Pine Hollow Road Realty Corp. v. Am. Tax Fund*, 96 A.D.3d 995 (2d Dep't 2012)…..　26 30

*Action S.A. v. Marc Rich & Co*., 951 F.2d 504, 509 (2d Cir. 1991) ...............................................34

*Amalfi, Inc. v 428 Co*., 153 A.D.3d 1610, 1610-11 (4th Dep't 2017)　………………………… 13

*In re Altmeyer*, 268 B.R. 349, 357 (Bankr. W.D.N.Y 2001) (same); In re Bean, 251 B.R. 196, 202 (E.D.N.Y. 2000)........................................................................................................ 25, 29,

*Arena Constr. Co. v. J. Sackaris & Sons, Inc*., 282 A.D.2d 489, 489 (2d Dep't 2001)................34

*Barnette v. Bell*, 213 A.D.2d 276, 276-77 (1st Dep't 1995) ..........................................................28

*Behrend v. New Windsor Group, LLC,* 180 A.D.3d 636, 639-40 (2d Dep't 2020) ..................... 27

*Borkowski v. Borkowski*, 39 N.Y.2d 982 (1976).............................................................................34

*In re Borriello*, 329 B.R. 367, 381 (Bankr. E.D.N.Y. 2005) …………………………………... 26

*In re Boston-Secor Houses*, 25 N.Y.2d 430, 432 (1969) ...............................................................18

*Burns v. Imagine Films Entertainment, Inc*., 165 F.R.D. 381, 390 (W.D.N.Y. 1996) .......... 25, 27

*Cadle Co. v. Lieberman*, No. 96 CV 495(RR), 1998 WL 1674549, at *8 (E.D.N.Y. Sept. 11, 1998) ..............................................................................................................................................19

*In re Carr*, 34 B.R. 653, 656 (Bankr. D. Conn.1983)....................................................................26

*Century 21 Constr. Corp. v. Rabolt*, 143 A.D.2d 873,874 (2d Dep't 1988)..................................15

*In re Checkmate Stereo & Elecs., Ltd*., 9 B.R. 585, 617 (Bankr. E.D.N.Y. 1981)........................21
*Christopher Phelps & Assoc v. Goldberg*, 492 F.3d 532, 542 (4th Cir. 2007)..............................18

*C. L. King & Assocs. v. Salisbury Bank & Trust Co*., 405 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) ......................................................................................................................................................20

*Columbia Fed. Sav. Bank v. Kofman*, 152 Misc. 2d 135, 135 (Sup. Ct. Queens County 1991)... 22

*Commerce Holding Corp. v. Board of Assessors* (Babylon), 88 N.Y.2d 724, 729-30 (1996) ..... 18

*Diebold Found., Inc. v Comm's*, 736 F.3d 172, 187 (2d Cir. 2013) .........................................21,25

*Dillon v. Dean*, 236 A.D.2d 360, 361 (2d Dep't 1997) ................................................................ 23

*DiMauro v. United, LLC*, 122 A.D.3d 568, 569 (2d Dep't 2014) .................................................33

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393 (S.D.N.Y. 2018)........25

*In re Dreier LLP*, 462 B.R. 474, 489 (Bankr SDNY 2011).........................................................21

*Emigrant Bank v. Commonwealth Land Title Ins. Co.,* No. 15-CV-7593, 2017 WL 4286335, at *6-8 (S.D.N.Y. Sept. 26, 2017)......................................................................................... 25

*Feggins v. Marks*, 171 A.D.3d 1014, 1016 (2d Dep't 2019) ...................................................28, 29

*Fields v Fields*, 15 N.Y.3d 158, 162 (2010) ...............................................................................17

*In re Fill*, 82 B.R. 200, 220 (Bankr. S.D.N.Y. 1987) ............................................................14, 17

*Goldenberg v. Friedman*, 191 A.D.3d 641, 644 (2d Dep't 2021) .................................................15

*Grace v. Nappa,* 46 N.Y.2d 560 (1979).........................................................................................16

*Gregg v. M & T Bank Corp.*, 160 A.D.3d 936, 940 (2d Dep't 2018) .......................................... 28

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir 1995)………..................... ..............16,20

*In re Hickey*, 168 B.R. 840, 849 (Bankr. W.D.N.Y. 1994)......................................................29, 30

*In re Jacobs*, 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008)............................................................19

*In re Jacobson*, 48 B.R. 497, 499 (Bankr. D. Minn. 1985) ........................................................ 26

*JP Morgan Chase Bank v. Munoz*, 85 A.D.3d 1124, 1126 (2d Dep't 2011)................................28

*In re Kaiser*, 32 B.R. 701, 705 (S.D.N.Y. 1983) ........................................................................ 23

*Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018)......................................13, 14, 19

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465-69 (2010).......................................................... 23

*In re LaForte*, No. 14-42711-NHL, 2017 WL 1240198 (Bankr. E.D.N.Y. Mar. 30, 2017)..........20

*Leventhal v. Spillman*, 234 F. Supp. 207, 209-10 (E.D.N.Y. 1964) .............................................23

*Levin v. Kitsis*, 82 A.D.3d 1051, 1052 (2d Dep't 2011) ...............................................................33

*Long Oil Heat, Inc. v. Spencer*, 375 F. Supp. 3d 175, 197 (N.D.N.Y. 2019) ...............................20

*In re Manhattan Investment Fund Ltd.*, 397 B.R. 1, 12 n.16 (S.D.N.Y. 2007) ............................29

*Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 129 (2d Dep't 1986)............................16, 17

*Markham Gardens L.P. v. 511 9th LLC*, 38 Misc. 3d 325, (Sup. Ct. Nassau County 2012) ....... 16

*McCarthy v. Estate of McCarthy*, 145 F. Supp. 3d 278, 287 (S.D.N.Y. 2015) .......................14, 19

*Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920) ...................................................................21

*Miller-Francis v. Smith-Jackson*, 113 A.D.3d 28, 33, 35 (1st Dep't 2013) .................................30

*Mortgage Elec. Registration Sys., Inc. v. Rambaran*, 97 A.D.3d 802 (2d Dep't 2012) ... 28-29, 30

*Mortgage Electronic Registration Sys., Inc. v. Pagan*, 119 A.D.3d 749, 753 (2d Dep't 2014) ............................................................................................................................ 28-29, 30, 31, 32

*Nassau Discount Corp. v. Allen*, 47 Misc. 2d 671, 671 (App. Term 2d Dep't 1965)................... 31

*In re Newman*, 11 BR 628 (Bky 1981)    ……………    26

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101 (2d Cir. 2006)............16

*In re Niagara Mohawk Power Corp. v. Assessor of Geddes*, 92 N.Y.2d 192, 196 (1998)........... 18

*NPR, LLC v. Met Fin Mgmt., Inc.*, 63 A.D.3d 1128, 1129 (2d Dep't 2009) ................................ 14

*O'Reilly-Morshead v. O'Reilly-Morshead,* 50 Misc. 3d 402, 407-08, 417-18 (Sup. Ct. Monroe County 2015) .................................................................................................................................17

*Ostashko v. Ostashko*, No. 00-CV-7162 (ARR), 2002 WL 32068357, at *23 (E.D.N.Y. Dec. 12, 2002) ...................................................................................................................................... 21

*Pashaian v. Eccleston Properties, Ltd.*, 88 F.3d 77, 85-86 (2d Cir. 1996)..................................16

*PennyMac Corp. v. Dean-Phillips*, 189 A.D.3d 1603, 1604-05 (2d Dep't 2020) .................. 31,32

*Piccarreto v. Mura*, No. 12/11476, 51 Misc. 3d 1230(A), 2016 WL 3201863, at *8 (Sup. Ct. Monroe County June 6, 2016), *aff'd for reasons stated below*, 158 A.D.3d 1095 (4th Dep't 2018) .....................................................................................................................................16, 17, 22, 24

*Pisula v. Roman Catholic Archdiocese of N.Y.*, 201 A.D.3d 88 (2d Dep't 2021) .........................29

*Pritchard v. Curtis*, 95 A.D.3d 1379, 1380 (3d Dep't 2012)........................................................23

*Rosario v. 251 E. 123rd Street Realty, LLC*, No. 20-cv-7387 (JSR), 2021 WL 2169020, at *5 (S.D.N.Y. May 27, 2021)................................................................................................................15

*Saadeh v. Kagan* No.20-CV-01945 (PAE) (SN), 2020 WL 5827942, at *3 (S.D.N.Y. Oct. 20,2021) .................................................................................................................................. 12,fn3

*Sardis v Frankel*, 113 A.D.3d ..................................................................................15, 20, 22, 27

*Savitsky v. Sukenik*, 240 A.D.2d 557, 559 (2d Dep't 1997)……………………………............17

*Sec v Haligiannis* 608 F Supp 2d 444,452…………………………………………….......16,18

*Scola v. Morgan*, 66 A.D.2d 228, 234 (1st Dep't 1979)…………………………………..16,17

*Matter of Schanzer*, 7 A.D.2d 275, 278 (1st Dep't 1959), aff'd, 8 N.Y.2d 972 (1960)…… .     17

*In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)…………………………………   13, 20

*S.E.C. v. Smith*, 646 Fed. Appx. 42, 45 (2d Cir. 2016)…………………………………….....13

 *Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 185 (2d Dep't 1978)…………… ..........20

*Spencer,* 375 F. Supp. 3d at 1980……………………………………………………… .....21

*Stout Street Fund I, L.P. v. Halifax Group, LLC*, 148 A.D.3d 744, 748 (2d Dep't 2017)………20

*Tae H. Kim v. Ji Sung Yoo*, 776 Fed. Appx. 16 (2d Cir. 2019)………………… .......................13

*US v Alfano* 34 F. Supp2d 827 (EDNY 1988)………………………………………….............19

*United States v. Mazzeo*, 306 F. Supp. 2d 204, 311 (E.D.N.Y. 2004)…………………………..19

*In re Xiang Yong Gao*, 560 B.R. 50, 62 (Bankr. E.D.N.Y. 2016) ..........................................13, 21

Federal Rules

Fed. R. Civ Pro Rule 56(a)........................................................................................18

Fed. R. Evid. 201(b)...............................................................................................18

Fed. R. Evid. 803(8)...............................................................................................18

Federal Statutes

11 U.S.C. § 550(a)                                                                        26

11 U.S.C. § 550(b)(1).......................................................................................... 26, 29

28 U.S.C. § 1332(a)(1)............................................................................................. 1

New York Constitution

Constitution, Article XVI.......................................................................................32

New York Statutes

DCL § 271(1) ..................................................................................................................14

DCL § 272 ...........................................................................................................17, 20, 25

DCL § 273 ................................................................................................................22, 29

DCL § 273-a                                                                              22

DCL § 275 ...............................................................................................................22,28,29

DCL § 276 .............................................................................................13, 15, 19, 23, 24

Limited Liability Law § 602 ................................................................................27

Real Property Law § 266 ....................................................................................27, 28

Tax Law § 1402 ...................................................................................................25

Tax Law § 1409 ..................................................................................................25

 N.Y. Evidence Proof of Cases §6:58 (Thomson Reuters 2021) .......................... 28

N.Y. City Charter, §§ 163-166                                                            18

20 N.Y. Jur. 2d Conspiracy—Civil Aspects § 15 (2021) .................................................

## OTHER SOURCES

91 N.Y. Jur. 2d Real Property Sales & Exchanges § 194 (2021) ................................ 17

1NY Evidence Proof of Cases §658 (Thomson Reuters 2021) ....................................18

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Plaintiff Cathay Bank ("Cathay") in support of its Fed R. Civ P Rule 56 motion for partial summary judgment motion against Defendants Jose Bonilla and Julio Montalvo("Paula's Administrators"),  representing the Estate of decedent Paula Malliarakis, ("Paula"), George Malliarakis ("George"), 26RoadAstoria LLC ("26 LLC"), Aphis Realty, Inc. ("Aphis"), 1847 Astoria LLC ("1847 LLC"), Dionysios Kaliampos ("Kaliampos"), and Dimitrios Pistikos ("Pistikos"). Upon the declarations of Brandon M. Zlotnick ("Zlotnick Dec."), Howard Kei ("Kei Dec"), Scott Gallant ("Gallant Dec."), David Fontana ("Fontana Dec."), Natalie Nafornita ("Nafornita Dec."), Will Barone ("Barone Dec."), and attached exhibits supporting Cathay's Local Civil Rule 56.1 Statement of Undisputed Facts ("SUF"), Cathay seeks (1) to set aside five transactions ("Transactions"); (2) money damages; and (3) attorney fees. The Transactions, which relate to improved realty located at 18-47 26th Rd Astoria, NY ("Astoria Property"), and fall into 2 categories:  fraudulent conveyances in 2014, 2015, and 2016, and bad faith encumbrances in 2015 and 2016. As will be demonstrated, there are no material issues of fact.

These Transactions, which will be addressed chronologically within their own categories, earliest first, present a pattern of fraud causing injury to the creditor rights of Cathay and Asia Bank, N.A. ("Asia"), which merged into Cathay in 2015.  Overlapping facts and related legal principles give rise to independently sufficient reasons for voiding transfers and to nullify the mortgages presently held by 26 LLC and Aphis on the Astoria Property.

## JURISDICTION

There is diversity of citizenship under  28 U.S.C. § 1332(a)(1).

## STANDARD OF REVIEW

Whether there are genuine issues of material fact under Fed R. Civ Pro Rule 56(a).

1

## FACTUAL BACKGROUND

George and Paula lived together for over 30 years, holding themselves out as husband and wife, but they were never legally married. (SUF ¶¶ 4-5)  Although Paula did not bring any money into the relationship (SUF ¶ 30), a residence at 3385 Bay Front Place, Baldwin NY ("Baldwin Property"), was purchased in 1999 in the names of George and Paula,  as tenants by the entirety. (SUF¶ 29)

In 2007, George's wholly owned company, 458 East 144th Realty Corp. ("458 Corp."), (SUF ¶ 32), borrowed $800,000 from Asia (SUF ¶ 33) (the "Baldwin Loan"), which George guaranteed (the "Baldwin Guaranty")  (SUF ¶ 35) and was secured by a mortgage on the Baldwin Property (the "Baldwin Mortgage") (SUF ¶34) requiring the payment of property taxes when due. (SUF¶ 37) However, beginning in 2008, no Baldwin property taxes were paid (SUF ¶38), a failure coinciding with George's deteriorating financial condition.

At the beginning of 2010, George owned Astoria Property, which he had purchased in 1977 (SUF ¶24). The certificate of occupancy authorized use as a 2 family dwelling (SUF ¶25), but at various times the Astoria Property was rented as a three family house (SUF ¶89). Despite owning this income producing property, George and Paula's joint income for 2010 was only $40,395. (SUF ¶43). By the end of 2010, judgments totaling $139,450 ("Prior Judgments against George")(SUF ¶¶ 39-42 ) including a $107,000 Judgment against both George and Paula (SUF ¶ 41) ("$107,000 Judgment Against George and Paula") and a federal tax lien of $237,752 ("IRS Lien") (SUF¶ 36),. representing George's debt for unpaid income taxes in 2007 and 2008, had been filed against George in Nassau County.  Failure to pay the IRS Lien rendered George presumptive insolvent (See *infra* p.19) ("George 2010 Insolvency Factors")

In February 2010, George deeded the Astoria Property, the net rental income of which was $29,704 in 2010 (SUF ¶43) to himself and Paula as tenants-in-common, for no consideration. (SUF ¶26,28) A month later, George and Paula physically separated (SUF ¶49) and George moved out of the Baldwin Property. At that time, George also owned, in his own name, NYrealty in Fort Ann, ( "Fort Ann Property") and in Liberty, ("Liberty Property").(SUF ¶ 68)

On March 31, 2011, George entered into an agreement ("2011 Agreement") with Paula, providing that George would "[s]imultaneously" transfer to Paula his remaining interest in the Astoria Property. (SUF ¶53) though acknowledging that "there is no legal right or obligation in either party regarding financial obligations," ("No Existing Obligations Statement") (SUF ¶ 52), and George received nothing of tangible value under the 2011 Agreement. (SUF ¶57)  Also George and Paula were required to "simultaneously" redeed to themselves as tenants-in-common, the Baldwin Property which was to be "promptly" marketed for sale and liens paid. (SUF ¶54-55) There were no other transfers under the 2011 Agreement. Paula agreed to hold George harmless for debts for her acts in the future. (Zlotnick Dec. Exhibit 6, § 3(A).)

There was no performance under the 2011 Agreement. George did not "simultaneously transfer" his remaining interest in the Astoria Property (SUF ¶¶ 58-59); and no Baldwin Property redeeding, or sale. (SUF ¶¶ 60-61 )  (Collectively, the "2011 Agreement Breach Factors.")  Paula continued living at the Baldwin Property (*see* SUF ¶¶ 112-113) while real estate taxes mounted at $70,935 per year. (SUF ¶101)

At the time of the 2011 Agreement, George was insolvent, or would have been rendered insolvent had he transferred his remaining interest in the Astoria Property. Interest was accruing on the outstanding $139,450 Prior Judgments against George (*see* SUF ¶¶ 39-42), and on the

outstanding IRS Lien. (SUF ¶36) No real estate taxes were being paid on the Baldwin Property, which had accrued to $400,661 by January 2014 (SUF ¶ 64) ("George's Insolvency as of the 2011 Agreement")

In January 2014, Asia commenced a foreclose action on the Baldwin Mortgage, and sought a deficiency judgment against George based on the Baldwin Guaranty ("Baldwin Foreclosure Action"). (SUF ¶80) Approximately one month after George and Paula had been served in the Baldwin Foreclosure Action (SUF ¶ 83), by deed executed March 4 and 6, 2014 ("2014 Deed"), George transferred his remaining interest in the Astoria Property to Paula ("2014 Transfer") (SUF ¶ 84), then appraised for $1,050,000 (SUF ¶ 69). The Real Property Transfer Report filed with 2014 Deed ("2014 RPT No Consideration Report") represented a sale price of $0  indicating that no consideration had been provided to George in exchange for the 2014 Transfer  (SUF ¶85) George admitted that he had received no tangible benefit in exchange for the 2014 Transfer. (SUF ¶ 87) ("George's No Receipt of Value Admission")

At the time of the 2014 Transfer, still outstanding were $139,450 in the Prior Judgments against George, (SUF ¶ 77) and the $237,752 IRS Lien (SUF¶76), $400,661.21 of unpaid real estate taxes on the Baldwin Property owed to Asia, which had paid the tax liens (SUF ¶¶ 79, 81), and the $800,000 principal remaining owed on the Baldwin Loan (SUF ¶ 78), plus accruing interest. By this time, George also owed $25,000 in unpaid real estate taxes on the Fort Ann Property (SUF ¶74), and $27,500 on the Liberty Property (SUF ¶ 75) 458 Corp. also owed tax arrears of approximately $273,000 on properties in the Bronx, owned by 458 Corp. (SUF ¶¶ 72-73), which 458 Corp had used to collateralize loans to 458 Corp., which George personally owed, as a borrower and/or guarantor, owed millions  Any net equity George held in the Fort Ann Property and the Liberty Property was less than the extent to which the Bronx properties

4

were underwater. (*Compare* SUF ¶¶ 72-73 *with id.* ¶¶ 69-70.) (Collectively, these factors are the "George 2014 Insolvency Factors.")

However, George and Paula never sold the Baldwin Property. Instead, they opposed Asia's summary judgment motion in the Baldwin Foreclosure Action (SUF ¶90), after the granting of which, on June 22, 2014 (SUF ¶91), Paula engaged in a protracted effort to forestall the Baldwin Property auction. First she obtained a stay pending appeal after an auction sale was noticed (*see* SUF ¶¶ 94-95), then failed to comply with the stay's terms by not making payments to Asia for use and occupancy. (SUF ¶96). Paula's history of frustrating Asia also included filing of bankruptcy petitions on April 13, 2015 (SUF ¶ 98) and August 31, 2015 (SUF ¶105) ("Paula's 2015 Bankruptcy Filings") and in 2016 against George (SUF ¶ 116).  The first such petition, commencing the "First Paula Bankruptcy" (SUF ¶98), was dismissed without discharging Paula's debts, on July 24, 2015, for multiple reasons, including a failure to comply with disclosure. (SUF ¶103). The second, commencing the "Second Paula Bankruptcy," (SUF ¶ 105) was dismissed, without discharging Paula's debts, on November 3, 2015, pursuant to a court-ordered stipulation that required Paula to pay monthly use and occupancy of $9,000 on the Baldwin Property (the "Use and Occupancy Obligation") (SUF ¶ 112), and to stop interfering with the Baldwin Foreclosure Action (the "So-Ordered Stipulation"). Paula's third bankruptcy filing in 2016, an involuntary bankruptcy petition against George (the "George Bankruptcy") (SUF ¶ 116),, was dismissed by an order, dated May 11, 2016, finding that the petition had been filed as part of a scheme to delay, hinder or defraud a creditor, *i.e.*, Cathay (the "Paula Fraudulent Scheme Finding"). (SUF ¶¶ 120-121)

After the Second Paula Bankruptcy was dismissed, Paula borrowed, through 1847 LLC, a company she wholly owned (SUF ¶142) $600,000 from Fifth Avenue Capital, LLC ("Capital")

(SUF ¶ 158), a private equity lender (SUF ¶144) ( "$600,000 Loan"). Capital had required, prior to making the $600,000 Loan, that Paula first form 1847 LLC (SUF ¶139) and transfer to it title to the Astoria Property as collateral (*id.*). This occurred on December 2, 2015, (the "2015 Transfer") contemporaneously with the $600,000 Loan to 1847 LLC, and 1847 LLC filed a Real Property Transfer Report (the "2015 RPT No Consideration Report") for the 2015 Transfer stating no consideration was paid (SUF ¶¶ 153-154), and 1847 LLC mortgaged the Astoria Property to Capital. (the "$600,000 Mortgage"). (SUF ¶159)

Prior to making the $600,000 Loan, Capital had actual notice of myriad red flags, including (1) Paula's 2015 Bankruptcy Filings, each filed within seven months of Paula's seeking the loan (SUF ¶¶ 98, 105) and the second dismissed the same month as she sought the loan (SUF ¶¶ 112, 125, 134); (2) Paula's credit score being in the 500s (SUF ¶ 135);(3) Paula's consumer indebtedness in excess of $150,000 (SUF ¶ 136); (4) Paula's twelve accounts recently in collection (SUF ¶ 137); (5) the 2014 Transfer and 2015 Transfers' having been made for no consideration (SUF ¶¶ 130, 132, 153); and (6) the 2011 Agreement under which George was to have received no consideration for the 2014 Transfer (SUF ¶ 138). In addition, Capital, by virtue of Paula's 2015 Bankruptcy Filings, had at least inquiry notice of the following : (1) the So-Ordered Stipulation imposing the Use and Occupancy Obligation (SUF ¶ 112); (2) extensive references to the Baldwin Foreclosure Action, in the 2015 Bankruptcy Filings, which alleged over $1,200,000 was owed (SUF ¶ 100), and requested a deficiency judgment against George (SUF ¶¶ 82, 102); (3) the 2014 Transfer being made approximately one month after commencement of the Baldwin Foreclosure Action (SUF ¶¶ 84, 102); (4) Paula's gross income of only $1,500 per month, in the absence of income from the Astoria Property (SUF ¶ 107); (5) the accruing of Baldwin Property taxes at a rate of $70,935.39 per year (SUF ¶ 101);

6

(Collectively, the factors listed in this paragraph and the last are the "Capital Notice of Fraud Factors.") (SUF ¶ 266)

A title search of the Astoria Property was conducted in 2015, Joseph Friedman, Defendant's title expert, testified that since the property sought to be mortgaged had previously been transferred without consideration, the title insurer could do either: (1)seek a transferor's affidavit stating that the transferor was neither insolvent at the time of the transfer nor rendered insolvent thereby , or (2) to communicate with counsel for the transferor of the no-consideration transaction to address solvency issues. (SUF ¶ 259) No affidavit was obtained. (SUF ¶¶ 146, 148-150.) Typically, if a prior transfer had occurred, pursuant to an agreement, the title search would ascertain whether the transferor was receiving any consideration. (SUF ¶260) However, the title insurer simply phoned George's attorney, who informed that the 2014 Transfer was due to George and Paula's separation and that George had understood and agreed to the 2014 Transfer (SUF ¶148). The title reader's notes for December 3, 2015, after this conversation, indicate that a no-consideration affidavit would be obtained from George (SUF ¶¶ 147-149), but none was obtained (SUF ¶150). Friedman did not know if there was any follow up and Friedman also admitted that if a title search showed that the transferor had received no tangible property under an agreement to transfer property, that circumstance should have been considered. (SUF ¶261). Had George been contacted, he would have presumably made the George Receipt of No Value Admission (SUF ¶ 87) and explained that the transfer of the Astoria Property was because Paula filed a proceeding against George's wife in Greece (SUF ¶88) (the "2014 Transfer Admission").("Collectively 2015 Due Diligence Failures")

Defendants' equity lending expert, Marc Schulder, admitted that when a loan applicant has filed for bankruptcy and that case has been dismissed, private equity lenders generally seek

the order of dismissal (SUF ¶ 263), something that common sense urges here, given Paula's

Insolvency Factors (defined *infra*). Mr. Schulder also admitted private lenders typically ask

borrowers, and the principals of corporate borrowers, about foreclosures. (SUF ¶ 264) Learning

of the Baldwin Foreclosure Action would have led to discovery of the deficiency judgment

sought against George. However, Capital's lending calculation and its due diligence largely

consisted of making certain its loan would be profitable under various contingency situations,

(SUF ¶151).  Schulder testified that the reason for requiring the 2015 Transfer was to "isolate"

the collateral property from claims of past, present, and future creditors of Paula's. (SUF ¶ 265).

("Schulder Collateral Isolation Testimony")

At the time of the 2015 Transfer,  (1) Paula's income for 2014 was $36,459, and her only

income that year was from the rental of the Astoria Property (SUF ¶ 93);  (2) Paula had the

$9,000 Use and Occupancy Obligation (SUF ¶112); (3) Paula's financial status was dire as

reflected in the Paula Credit Report; (SUF ¶133)  (4)Paula had asserted in the Second Paula

Bankruptcy that: (a)  her net monthly income from renting out the Astoria Property was $4,466,

but that her total net monthly income, without subtracting any expenses associated with the

Astoria Property, was $2,987; (SUF ¶106);  (b) her only income in 2015 was from rental of the

Astoria Property and from Social Security, the latter of which was in the amount of $1,500 per

month; (SUF ¶107);  (c) Paula's personal property was worth only $21,479 as of September 24,

2015; (SUF ¶108); (d) Paula grossly overestimated her own assets to be worth $2,521,479.00,

but $1.5 million of this was attributed to the Baldwin Property (SUF ¶ 109) and the Judgment of

Foreclosure and Sale in the Baldwin Foreclosure Action  ("Judgment of Foreclosure") had

already been entered in October 2014 (SUF ¶ 92)  (the Baldwin Property later was auctioned for

$750,000 (SUF ¶ 117); (e) as of September 23, 2015, Paula claimed that her total liabilities were

in the amount of $1,960,191.48; (SUF ¶111) (Collectively, these are the "Paula 2015 Insolvency Factors.")

Capital had actual or constructive knowledge of the Paula Insolvency factors. The $600,000 Loan worsened Paula's already poor financial condition. The $600,000 Mortgage carried interest at 10%, required 6 months prepayment of interest, imposed an origination fee of $12,000, had Paula paying all of Capital's expenses, and had a balloon provision after only nine months. (SUF ¶ 162; Zlotnick Dec. Exhibit 81 [SUF ¶ 162 inadvertently cites Exhibit 82].). (Collectively, these are the "$600,000 Loan Aggravating Factors".)

On January 19, 2016, Paula filed the involuntary petition, in the George Bankruptcy. (SUF¶116)  That day, before Cathay received notice of the Petition in the George Bankruptcy, the auction occurred, with Cathay the successful bidder at $750,000. (SUF ¶117.)

In March 2016, 1847 LLC borrowed $75,000 from Aphis (SUF ¶169), whose principal is Pistikos (SUF ¶ 22) (the "First Aphis Loan"), which collateralized by a mortgage on the Astoria Property ("First Aphis Mortgage") (SUF ¶170).  Aphis, represented by John Mincone ("Mincone") (SUF ¶ 176), ran no credit check on 1847 LLC or on Paula, who, Pistikos testified, "was always broke" (SUF ¶157).  Aphis had no procedure for checking credit worthiness (SUF ¶174 ) The title search for the First Aphis Loan, contained the cover page for the 2015 Deed, with the 2015 RPT No Consideration Report.  (SUF ¶171)

In addition, Aphis had constructive notice that the 2014 RPT No Consideration Report (See supra ).  Had it asked Paula about bankruptcies and foreclosures, it would have also learned of Paula's bankruptcies and the Baldwin Foreclosure Action and be charged, with reviewing  the contents of the files therein. (*See* SUF ¶¶ 266-267. Barone Dec. ¶¶ 2-3.)

On May 11, 2016, Cathay docketed a $455,000 money judgment against Paula (the "Money Judgment Against Paula") in its counterclaims in *Malliarakis v. Malliarakis et al.*, No. 15-cv-05060, EDNY, an action brought by Paula against Asia and George. (SUF ¶165)

As he admitted, Pistikos' ultimate goal was to acquire the Astoria Property.(SUF ¶207 ) Pistikos entered into an $875,000 contract with 1847 LLC in April 2016 in an attempt to purchase ("Attempted Purchase") the Astoria Property (the "Pistikos Agreement").[1] (SUF ¶ 179; Zlotnick Dec. Exhibit 90 [SUF ¶¶ 179-182 inadvertently cite Exhibit 91].) In the course of Pistikos's attempting to obtain title insurance, emails were sent to Mincone, counsel to Pistikos (SUF ¶ 185), raising title objections because:  the two immediately preceding transfers were for no consideration (SUF ¶¶ 188-189); Paula had filed for personal bankruptcy (SUF ¶190); Paula had filed a bankruptcy petition against George (SUF ¶191); and the Money Judgment Against Paula had been entered.(SUF  ¶192).  Because of these title issues, all of which Mincone had written notice (SUF ¶¶ 187-192), (Collectively these objections will be called the "Pistikos Agreement Title Issues" ), title insurance could not be obtained on the Attempted Purchase, which was never consummated (SUF ¶193), as no title insurer would issue a policy without conditions. (*Id*)  Nevertheless, the Pistikos Agreement was never cancelled. (SUF¶194) while Pistikos pursued other means of obtaining the Astoria Property.

Pistikos, again represented by Mincone, purchased through a Mortgage Loan Purchase Agreement the $600,000 Loan and Mortgage (SUF ¶¶195-196). Through 26 LLC, his wholly owned (SUF ¶ 23) newly formed company, on August 19, 2016 (SUF ¶ 195). By then, all prepaid interest on the $600,000 Loan had been exhausted (SUF ¶¶ 164, 197) and it was scheduled to balloon on September 30, 2016.(SUF ¶196), and First Aphis Loan was also in

---

[1] There was a provision on the signature page referring to "B" (SUF ¶ 181), presumably a Rider, as attached to the Pistikos Agreement, but same was never produced, and Pistikos' attorney said he didn't have same (SUF ¶¶ 182-83, 186),

default. (SUF ¶200) 26 LLC obtained an assignment of Capital's title insurance policy as a condition of the sale. (SUF ¶201)

At the time of mortgage purchase, 26LLC, through  Pistikos, knew of all of the Pistikos Agreement Title Issues. (SUF ¶¶ 203-206.) Still Aphis extended another $30,000 loan to Paula (the "Second Aphis Loan") on August 18, 2016.  (SUF ¶209) Although Paula executed a mortgage upon the Astoria Property to secure the Second Aphis Loan (the "Second Aphis Mortgage"),(SUF ¶210) this  mortgage was never recorded. (SUF ¶211) The Second Aphis Loan ballooned August 28, 2017 (SUF¶212)

Although the Pistikos Agreement had not been cancelled, on or about October 19, 2016, using Kaliampos as a strawman, (SUF ¶216) Pistikos acquired beneficial ownership of the Astoria Property It has an appraised valuefor the time of $1,075,000 as a legal two family (SUF¶ 238) though then rented to three families. Paula sold all of the shares in 1847 LLC ("2016 Transfer") through the Membership Interest Sale agreement ("Membership Sale Agreement") to Kaliampos (SUF¶213) with  Kaliampos as the nominal purchaser.  The consideration to Paula, who was still living in the Baldwin Property without paying Cathay under the So Ordered Stipulation , was the forgiveness of principal of the mortgage indebtedness, aggregating $705,000. (SUF ¶ 226). There was no requirement that Paula be paid any other consideration, but Pistikos has stated that he raised cash which Pistikos gave to Kaliampos to pay to Paula (SUF ¶ 229-230) in keeping with the charade of Kaliampos as purchaser. Kaliampos testified that he had nothing to do with the Astoria Property after the October 19, 2016 closing. (SUF ¶242.) Kaliampos' attorney on the 2016 Transfer was Mincone. (SUF ¶222). Five days before, on October 14, 2016, William Mavrelis, Esq., who was representing Paula on the 2016 Transfer, first heard that of the proposed transfer.  (SUF ¶¶ 223-224.)  No title search was done and despite

11

the Membership Sale Agreement calling for the purchase of 1847 LLC's shares (SUF ¶ 221 ) .

Certainly, the hasty sale did not invite due diligence, such as title search. Although the Operating

Agreement of 1847  LLC, which was given to Mincone at the closing (SUF ¶ 225) prohibited the

transfer of Paula's membership interest in 1847 LLC (SUF ¶ 143) (the "No-Transfer Clause"),

the 2016 Transfer doing so proceeded. An RPT Report for the 2016 Transfer, which was

required, under New York State Tax Law §§ 1402 and 1409, was not filed (SUF ¶ 236.)

(Collectively, the factors listed in this paragraph are the "2016 Transfer Irregularities.

On June 13, 2017, Cathay, having by then obtained a $793,294.23 deficiency judgment

against George in the Foreclosure Action (the "Money Judgment Against George") (SUF ¶122),

commenced this action. Kaliampos was named, in the original complaint herein, as a defendant

and the owner of 1847 LLC. The attorney for Kaliampos in this action, now representing both

Pistikos and Kaliampos herein, finally stipulated that Kaliampos acted solely as Pistikos' agent

and front man with in the 2016 Transfer (SUF ¶216). The Money Judgment  Against Paula is

wholly unsatisfied (SUF ¶ 167), and of the Money Judgment Against George, approximately

$684,279.43 remains outstanding, after a partial payment (SUF ¶¶ 122-126).

## ARGUMENT

### INTRODUCTION

Jurisprudence relevant to the fraudulent conveyances at bar is New York's former Debtor

and Creditor Law ("DCL"),[2] discussed in Point I. The DCL's purpose was to enable creditors to

obtain their due despite debtor's efforts, however elaborate or inventive, to elude payment. The

jurisprudence supporting Cathay's claims for bad faith encumbrancing of the Astoria Property,

---

[2] Each of the fraudulent conveyance claims in this action is based on sections of the former Article 10 of the DCL that was replaced effective April4, 2020, by the Uniform Voidable Transaction Act, which is prospective only; all transactions at issue herein predated the amendment.  See *Saadeh v. Kagan* No.20-CV-01945 (PAE) (SN), 2020 WL 5827942, at *3 (S.D.N.Y. Oct. 20,2021).  The full text of the relevant sections, which are summarized below in the context of the fraudulent conveyances, is set forth in their entirety in the Appendix.

which is discussed in Point II, also protects creditors from lenders who in pursuit of profits, disregard notice of past fraudulent conveyances, or fail to perform due diligence. Under DCL §§ 273, 273-a, 275, and 276 such fraudulent conveyances can be set aside or ignored under DCL § 278(1) and the subject property attached or subject to execution, here without the mortgages and any other encumbrances of 26 LLC and Aphis.

**POINT I**

**THE 2014, 2015, AND 2016 TRANSFERS SHOULD BE INVALIDATED**

**A.     THE 2014 TRANSFER SHOULD BE INVALIDATED**

**1.       The 2014 Transfer Was Actually Fraudulent (First Cause of Action)**

DCL § 276 ("§ 276") prohibited every conveyance and every obligation incurred with actual intent, on part of transferor, to hinder, delay or defraud present or future creditors. *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). "[B]ecause proving '[a]ctual intent [under § 276] is difficult to establish through direct evidence ..., the relevant intent may be inferred from the facts and circumstances surrounding the transfer."  *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) (quoting *S.E.C. v. Smith*, 646 Fed. Appx. 42, 45 (2d Cir. 2016)) (summary order), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 Fed. Appx. 16 (2d Cir. 2019). "These so-called 'badges of fraud' are facts and circumstances 'so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Kim*, 311 F. Supp. 3d at 612 (quoting *In re Sharp Int'l Corp.*, 403 F.3d at 56). Although not all badges of fraud must be proven to demonstrate fraudulent intent, the 2014 Transfer presents many. First, there was inadequacy of consideration *Kim*, 311 F Supp. 3d at 612. George received nothing in return for the 2014 Transfer, as confirmed by the 2014 RPT No Consideration Report, which report estops signatories George and Paula from claiming consideration was given. *See, e.g.*, *Amalfi, Inc. v 428 Co.*, 153 A.D.3d 1610, 1610-11 (4th Dep't 2017).

13

Second, there was a close relationship between the parties, *see Kim*, 311 F Supp. 3d at 612. Considering George and Paula were a couple for over three decades, transfers between the affecting creditors were not arm's length transactions. *See In re Fill*, 82 B.R. 200, 220 (Bankr. S.D.N.Y. 1987) (treating debtor transfers from debtor to ex-mother-in-law who "shared a close family relationship for many years" as intrafamily warranting heightened scrutiny of fraudulent intent).

Third, George's poor financial condition pre 2014 Transfer would only worsen after he gave up his interest in the Astoria Property. *Kim*, 311 F Supp. 3d at 612. DCL § 271(1) defines insolvency as a transferor's having assets with a fair salable value less than the amount required to pay probable liability on existing debts as they mature. At the time of the 2014 Transfer, George's liabilities together exceeded his assets, and he was insolvent, a circumstance presumed by his unpaid IRS Lien. *See McCarthy v. Estate of McCarthy*, 145 F. Supp. 3d 278, 287 (S.D.N.Y. 2015) (finding that decedent who had allegedly made fraudulent conveyances was insolvent at all relevant times when, *inter alia*, at all relevant times, the decedent owed state taxes). George could not possibly expect to pay debts after transferring his remaining interest in the Astoria Property, the only property he then had with sufficient equity capable of paying off those debts. Debtor's transfer of the only property capable of being to paying debts is actually (§ 276) and constructively (§ 273) fraudulent. *See NPR, LLC v. Met Fin Mgmt., Inc.*, 63 A.D.3d 1128, 1129 (2d Dep't 2009).

Fourth, "the degree of the transferor's knowledge of the creditor's claim and the transferor's inability to pay it," *Kim*, 311 F. Supp. 3d at 612, is a badge of fraud. George had

been served with the Baldwin Foreclosure Complaint, apprising him of Asia's claim,[3] and he would personally know the 2010 and the 2014 George Insolvency Factors.

Fifth, the 2014 Transfer was a "secret and hasty transfer not in the usual course of business," *Kim*, 311 F. Supp. 3d at 612. It occurred approximately a month after service upon George of the Baldwin Foreclosure Action.

Sixth, the 2014 Transfer was followed by the 2015 Transfer and 2016 Transfer, which were a series of transactions moving Astoria Property ownership further away from the insolvent George. *See Kim*, 311 F. Supp. 3d at 612 (the effect of a pattern or series of transactions after the incurring of debt, and the chronology of the events, are badges of fraud).

Although proof of transferee's fraudulent intent is unnecessary for § 276 liability, Paula certainly had such intent as well. She paid no consideration, far less a fair equivalent for the Astoria Property, and was aware of Asia's claims against George. (as her Baldwin Foreclosure Action Co-defendant.)  *See Goldenberg v. Friedman*, 191 A.D.3d 641, 644 (2d Dep't 202), knew of the Baldwin Foreclosure Action, of George's liability for any deficiency judgment therein, and by virtue of outstanding liens upon the Baldwin Property, of the IRS Lien, and the Prior Judgments Against George, which included the $107,000 Judgment Against George and Paula. *See Rosario v. 251 E. 123rd Street Realty, LLC*, No. 20-cv-7387 (JSR), 2021 WL 2169020, at *5 (S.D.N.Y. May 27, 2021); *see also Sardis v. Frankel*, 113 A.D.3d 135, 142 (1st Dep't 2014) (transferee's knowledge of impending judgment against transferor defeats transferee's good faith for purpose of constructive fraudulent conveyance claims).

---

[3] In addition, George had to know of his existing violations of his obligation to pay property taxes on the Baldwin Property, and pay the $800,000 Baldwin Property Mortgage as required by the Baldwin Mortgage, pay the IRS debt, and the prior Judgments against him.

## 2.  There Was No Antecedent Debt

Defendants have alleged that the 2011 Agreement created an antecedent debt supporting the 2014 Transfer (*see* Rebuttal Expert Report of Joseph N. Friedman, p. 4)  an affirmative defense, *see Century 21 Constr. Corp. v. Rabolt*, 143 A.D.2d 873,874 (2d Dep't 1988),  *lv. denied*, 73 N.Y.2d 709 (1989), which fails for several reasons. First, satisfaction of antecedent debt is not a defense in cases, where, as here, there is an actual fraud intent to hinder, delay, or defraud creditors. *See Pashaian v. Eccleston Properties, Ltd.,*88 F.3d 77, 85-86 (2d Cir. 1996); *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 634 (2d Cir. 1995).

Second, the 2014 Transfer was not in satisfaction of any antecedent debt as demonstrated by the 2011 Agreement's wording including the No Existing Obligations Statement, and George's 2014 Transfer Admission.

 Third, the 2011 Agreement Breach Factors vitiates the 2011 Agreement. When a debtor transfers property ostensibly to satisfy an obligation of a prior agreement, but only years after the transfer was required and after the transferor is threatened with a judgment, the transfer is not treated as having been made pursuant to that agreement or in satisfaction of an antecedent debt. *See Piccarreto v. Mura*, No. 12/11476, 51 Misc. 3d 1230(A), 2016 WL 3201863, at *8 (Sup. Ct. Monroe County June 6, 2016), *aff'd for reasons stated below*, 158 A.D.3d 1095 (4th Dep't 2018); *Scola v. Morgan*, 66 A.D.2d 228, 234 (1st Dep't 1979); *see also Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 129 (2d Dep't 1986).  Delay recording a mortgage can be a badge of fraud.  *Sec v Haligiannis* 608 F Supp 3d 444,452 (referring to DCL in federal debt collection case)

Fourth, the 2011 Agreement Breach Factors, were to Asia's significant detriment because the failure to sell the Baldwin Property resulted in years of unpaid accruing property taxes,

interest on the Baldwin Loan, and litigation expenses *Markham Gardens L.P. v. 511 9th LLC*, 38 Misc. 3d 325, (Sup. Ct. Nassau County 2012) (material breach relieves performance by nonbreaching party) (citing *Grace v. Nappa*, 46 N.Y.2d 560 (1979)); *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006). Here delayed performance defeated the contract purpose which included promptly eliminating any Baldwin Property obligations. *Savitsky v. Sukenik*, 240 A.D.2d 557, 559 (2d Dep't 1997) (contract may be abandoned by one party's refusal to perform, where other party's assents) *see also* 91 N.Y. Jur. 2d Real Property Sales & Exchanges § 194 (2021) (contract will be deemed abandoned when one party acts inconsistently with its terms, with the other party's acquiescence). Though, Cathay was not a contracting party, this would be true whenever a creditor seeks to set aside a fraudulent transaction between the debtor and a transferee, as in *Piccarreto*, *Scola*, and *Murkoff*, *supra*. Here, George more than acquiesced. He joined Paula in opposing the Baldwin Foreclosure Action, rather than sell the property under the 2011 Agreement, thereby unequivocally abandoning of the 2011 Agreement. *See Matter of Schanzer*, 7 A.D.2d 275, 278 (1st Dep't 1959), *aff'd*, 8 N.Y.2d 972 (1960).

Fifth, in order to qualify as an antecedent debt, the debt must be for "fair consideration" under DCL § 272, which requires a good faith exchange of "fair equivalent value", including the discharge of antecedent debt that is not disproportionately small in comparison to that of the transferred property. *See in re Fill*, 82 B.R. 200, 215 (*Bankr*, S.D.N.Y. 1987). Here, there is the George No Receipt of Value Admission, the No Existing Obligations Statement, and the terms of the 2011 Agreement. Since the parties were not married, equitable distribution could not serve as consideration. *O'Reilly-Morshead v. O'Reilly-Morshead*, 50 Misc. 3d 402, 407-08, 417-18 (Sup.

Ct. Monroe County 2015) (citing *Fields v Fields*, 15 N.Y.3d 158, 162 (2010), ("marriage [is] the touchstone for determining property subject to equitable distribution").

Sixth, independently of other considerations, the 2011 Agreement violated § 275;  it was not made in good faith, considering among other things George's 2010 Insolvency Factors.

Seventh, 2014 Transfer RPT George and Paula are estopped by the 2014 No Consideration RPT from claiming an antecedent debt, which is not considered. See *supra p. 13)*

Eighth, even if the 2011 Agreement asked for consideration, the recording of the deed in 2014, is the key in the context of a fraudulent conveyance case *Sec v Haligiannis*, *supra* at 452 (referring to *deminimus* burden of recording mortgage versus effect of delay on innocent creditors.) By then, George was being sued in the Baldwin Foreclosure.

Ninth, in 2010-2011, the Astoria Property's assessed value was $644,000, based on market value ( SUF ¶ 63; Zlotnick Dec. Exhibit 113,  NYS Office of Real Property Tax Services, Fair Assessments: A Guide for Property Owners), and is presumptively valid, *In re Boston-Secor Houses,* 25 N.Y.2d 430, 432 (1969) (assessing authority bound by assessment condemnation figures); *In re NiagaPower Corp. v. Assessor of Geddes*, 92 N.Y.2d 192, 196 (1998) (locality's tax assessment is presumptively valid); *see also* 1 N.Y. Evidence Proof of Cases §6:58 (Thomson Reuters 2021) ("A valuation for purposes of assessment, made without the owner's participation, is admissible to show value for other purposes."). NY's Constitution, Article XVI, § 2, prohibits any property assessment for greater than market value, *see Commerce Holding Corp. v. Board of Assessors (Babylon)*, 88 N.Y.2d 724, 729-30 (1996). An aggrieved owner can challenge the assessment, *N.Y. City Charter,* §§ 163-166. Therefore, consistent with Fed. R. Evid. 401, an assessment is admissible as more likely than not to show market value. See *Christopher Phelps & Assoc v. Goldberg*, 492 F.3d 532, 542 (4th Cir. 2007), admitting tax

18

assessment as evidence of value of property as a public record under Fed. R. Evid.803(8). In any

event, whatever market value of the Astoria Property was infinitely greater than what Paula gave

for it. Therefore, Cathay requests that the Court to take judicial notice of the assessed value

under Fed. R. Evid. 201(b) and for 2010-2011.

### 3.    The 2014 Transfer Was Constructively Fraudulent (Second Cause of Action)

### a.   The 2014 Transfer Was Constructively Fraudulent Under DCL § 273

DCL § 273 ("§ 273") prohibited conveyances not for fair consideration occurring, during

or leading to the transferor's insolvency. Because the 2014 Transfer was between persons with a

close relationship, the entire transaction is to be viewed as presumptively fraudulent under § 273,

without regard to solvency. "Courts view *intrafamily* transfers without any signs of tangible

consideration as presumptively fraudulent." *In re Jacobs,* 394 B.R. 646, 661 (Bankr. E.D.N.Y.

2008) (emphasis in original). Such transfers shift to the transferee the burden of proving fair

consideration. *See Kim*, 311 F. Supp. 3d at 611; *see also Cadle Co. v. Lieberman*, No. 96 CV

495(RR), 1998 WL 1674549, at *8 (E.D.N.Y. Sept. 11, 1998) ("Where a challenged conveyance

involves family members …,'"a heavier burden is placed on the grantee to demonstrate fair

consideration for the transfer.'""

### (i)  The 2014 Transfer Occurred During, or Caused, George's Insolvency

As discussed with regard to § 276, George was, at the very least, rendered insolvent by

the 2014 Transfer, regardless of whether it is viewed as having been made at the time of the 2011

Agreement ( see George 2010 Insolvency Factors) or at the time of the 2014 Transfer  (see

George 2014 Insolvency Factors). George was presumably insolvent, and all his salable assets

were less than his obligations both times. *See McCarthy v. Estate of McCarthy*, 145 F. Supp. 3d

278, 287 (S.D.N.Y. 2015) (finding that decedent who had allegedly made fraudulent

conveyances was insolvent at all relevant times when, *inter alia*, at all relevant times, the

decedent owed state taxes).In addition, when a conveyance is made without fair consideration, as will now be discussed,"insolvency is presumed" with the burden of rebuttal upon the transferee. *United States v. Watts*, 786 F.3d 152, 165 (2d Cir. 2015) (quoting *United States v. Alfano,* 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999))

### (ii) The 2014 Transfer Was Made Without Fair Consideration

DCL § 272 ("§ 272"), which defines the fair consideration requirement of § 273, has a well-settled meaning:

> [F]air consideration is given when three criteria are met: (1) in exchange for the debtor's property, the recipient either conveys property or discharges an antecedent debt; (2) the debtor receives the "fair equivalent" of the property conveyed; and (3) the exchange is undertaken in good faith. *In re Sharp Int'l Corp.*, 403 F.3d 43, 53-54 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995)).

*In re LaForte*, No. 14-42711-NHL, 2017 WL 1240198, at *5 (Bankr. E.D.N.Y. Mar. 30, 2017).

Here, George's 2014 Transfer to Paula did not discharge any antecedent debt (*see supra* p.15) and, George could not have received a "fair equivalent" for the Astoria Property. *E. g.* see George's Admission 2014 Transfer; George's Receipt of No Value Admission; No Existing Obligation Statement and content 2011 Agreement.

### (iii) The 2014 Transfer Lacked Good Faith

Even assuming *arguendo* George received a fair equivalent for the Astoria Property, the 2014 Transfer was not undertaken in good faith, alone sufficient for constructive fraud. *See, e.g.*, *Stout Street Fund I, L.P. v. Halifax Group, LLC*, 148 A.D.3d 744, 748 (2d Dep't 2017). Both the transferor and the transferee must act in good faith.  *C. L. King & Assocs. v. Salisbury Bank & Trust Co.*, 405 F. Supp. 3d 362, 370 (N.D.N.Y. 2019). Generally, "[g]ood faith 'is lacking where there is a failure to deal honestly, openly, and fairly.'" *Sardis*, 113 A.D.3d at 142; *accord Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 185 (2d Dep't 1978). A lack of good faith

may be shown by "(1) the lack of 'an honest belief in the propriety of the activities in question'; (2) 'intent to take unconscionable advantage of others'; and (3) 'intent to, or knowledge of the fact that the activities will hinder, delay, or defraud others.'" *Long Oil Heat, Inc. v. Spencer*, 375 F. Supp. 3d 175, 197 (N.D.N.Y. 2019) .

Both George and Paula should have known that the 2014 Transfer would have hindered, delayed and defrauded Cathay's ability to collect a deficiency judgment against George. Both were defendants in the Baldwin Foreclosure Action before the 2014 Transfer; were aware of liens against the Baldwin Property, as referenced in the Baldwin Foreclosure Action and generally referred in the 2011 Agreement, which required using the proceeds from the sale of the Baldwin Property to satisfy debts associated with Baldwin Property. *See Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416 (1920) (in absence of fraud or other wrongful act by other contracting party, contract signatory is presumed to know and assent to its contents).

Moreover, even if a transferee provides equivalent value, a party to the transaction lacks good faith if it has either actual or constructive knowledge of a fraudulent scheme. *Frank*, 48 F.3d at 636; *Spencer*, 375 F. Supp. 3d at 1980); Constructive knowledge of a fraudulent scheme exists where, "based upon the surrounding circumstances, they 'should have known' about the entire scheme." *Diebold Found., Inc. v Comm's*, 736 F.3d 172, 187 (2d Cir. 2013) constructive notice includes, "inquiry knowledge," "where transferees were aware of circumstances that should have led them to inquire further into the circumstances, but … failed to make such inquiry." *Id.* (quoting *Frank*, 48 F.3d at 636). "Good faith…is lacking where the transferee 'knew, *or should have known*, that he was not trading normally, but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.' " *In re Dreier LLP*, 462 B.R. 474, 489 (Bankr SDNY 2011) (citation omitted).  One sign of such bad

faith on a transferee's part is \ knowledge of a transferor's unfavorable financial condition at the time of the transfer. *In re Xiang Yong Gao*, 560 B.R. 50, 62 (Bankr. E.D.N.Y. 2016); *Ostashko v. Ostashko*, No. 00-CV-7162 (ARR), 2002 WL 32068357, at *23 (E.D.N.Y. Dec. 12, 2002); *In re Checkmate Stereo & Elecs., Ltd.*, 9 B.R. 585, 617 (Bankr. E.D.N.Y. 1981). Because, Paula had to know in 2010 of the $107,000 Judgment against George and Paula, of the $238,000 Tax Lien on the Baldwin Property, and other George 2010 Insolvency Factors.  She had constructive notice, and by 2014 George's finances had only worsened.

In addition, a conveyance is not in good faith "where the transferee is aware of an impending enforceable judgment against the transferor." *Sardis*, 113 A.D.3d at 142. Paula had reason to know that George's transferring to her a substantial income producing asset to her would likely make it difficult for him to pay his 2014 debts.

Finally, George's knowledge alone that the in 2011 and 2014 that transfer of  Astoria Property would hinder, delay or defraud creditors, of George 2010 Insolvency Factors, and George 2014 Insolvency Factors, rendered the 2014 Transfer in bad faith.  *Sardis*, 113 A.D.3d at 142.

### b.    The 2014 Transfer Was Constructively Fraudulent Under DCL § 273-a

DCL § 273-a ("273-a") provided that any transfer made without fair consideration, when transferor was a defendant in an action for money damages, was fraudulent without regard to intent, if resulting judgments went unsatisfied. George was a defendant in the Baldwin Foreclosure Action at the time of the 2014 Transfer, and a deficiency judgment was ultimately entered against him in that action, and is unsatisfied, triggering liability under § 273-a. *See Columbia Fed. Sav. Bank v. Kofman*, 152 Misc. 2d 135, 135 (Sup. Ct. Queens County 1991) (deficiency judgment claim in a foreclosure case is action for money judgment).

### c.    The 2014 Transfer Was Constructively Fraudulent under DCL § 275

DCL § 275 ("§ 275"), which prohibited any transfers without fair consideration where the transferor believes he will incur debts beyond his ability to pay at maturity, has been applied to property transfers in anticipation of an adverse judgment. *See Piccarreto*, 2016 WL 3201863, at *12.

### B.    The 2015 Transfer Should Be Invalidated

### 1.    The 2015 Transfer Was Actually Fraudulent (Fourth Cause of Action)

Under § 276, the 2015 Transfer presents multiple badges of fraud.  Summary judgment had been entered against in the Baldwin Foreclosure Action by the time of the 2015 Transfer, and Paula had twice unsuccessfully petitioned for bankruptcy in 2015. Paula, as sole owner of 1847 LLC, retained the benefit of the Astoria Property after the 2015 Transfer. *Kim*, 311 F. Supp. 3d at 612.  The effect of 2014 Transfer was to move the Astoria Property away from George, and then, the 2015 Transfer distanced it from Paula.  *Id*

 Debtor's property transfer to a debtor entity controls, is actually fraudulent. *See Dillon v. Dean*, 236 A.D.2d 360, 361 (2d Dep't 1997) (transfer of real property to debtor's wholly-owned corporation); *Pritchard v. Curtis*, 95 A.D.3d 1379, 1380 (3d Dep't 2012) (transfer of real realty from debtor through one friend to another, then to corporation formed by debtor's boyfriend less than one month earlier); *Leventhal v. Spillman*, 234 F. Supp. 207, 209-10 (E.D.N.Y. 1964) (transfer of debtor's business's assets to newly formed corporation, in exchange for corporation's promise to pay debtor's business debts); *see also In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983) (debtor's shifting assets to debtor-owned corporation is badge of fraud, violating 11 U.S.C. § 727(a)(2)(A), which applies same badges of fraud as *Kim* applied to § 276).

Because Paula was the sole owner of 1847 LLC, Paula's fraudulent intent with regard to the 2015 Transfer is also imputed to 1847 LLC. *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446,

465-69 (2010) (imputing to corporation fraud committed by corporate officers). Consequently, both the transferor and transferee as to the 2015 Transfer acted with fraudulent intent.

### 2. The 2015 Transfer Was Constructively Fraudulent Under § 275 (Fifth Cause of Action)

Against the background of the $600,000 Loan Aggravating Factors, the 2015 Transfer worsened Paula financially and faced her with a balloon payment in 9 months that she could not pay.  The 2015 Transfer moved, out of Paula's hands, and weakened her title to the one significant asset in which she had equity, and was her  only source of income except Social Security. Two pre-2015 Transfer bankruptcy filings establish her knowledge of her own insolvency and of her inability to pay debts as they matured. *See Piccarreto*, 2016 WL 3201863, at *8.

### C. The 2016 Transfer Should Be Invalidated

### 1. The 2016 Transfer Was an Actually Fraudulent Conveyance Under § 276 (Seventh Cause of Action)

Under § 276, the 2016 Transfer was actually fraudulent based *inter alia*, on the 2014 and 2015 no consideration transfers, Paula's 2015 Bankruptcy Filings, Paula's Use and Occupancy Obligation, Paula's 2015 Insolvency Factors, the inadequacy of the 2016 Transfer consideration, Paula's avoidance of the Judgment against Paula, the George Bankruptcy, Paula Fraudulent Scheme Findings, and the 2016 Transfer Irregularities. ("2016 Fraudulent Intent Factors").

Though not necessary under § 276 to prove purchaser's fraudulent intent, Pistikos knew Paula was always broke, and Pistikos and Kaliampos's attorney's earlier received notice of May 2016 Title Objections, including Paula's Bankruptcy Filings, the George Bankruptcy, no consideration 2014 and 2015 Transfers, and the Money Judgment Against Paula. Mincone also had received 1847 LLC's Operating Agreement with its No-Transfer Clause**;** and had inquiry notices of Paula's Fraudulent Scheme Finding, the Baldwin Foreclosure Action including the

Judgment of Foreclosure and Sale, and the violation of the So-Ordered Stipulation. Inquiry notice is sufficient to demonstrate an intentionally fraudulent conveyance. *See* discussion, *supra* p. 21, See *Diebold*, *supra*, at 187.  What his attorney knew, Pistikos is deemed to know.  *See Burns v. Imagine Films Entertainment, Inc.,* 165 F.R.D. 381, 390 (W.D.N.Y. 1996) (knowledge of contents of all documents received by counsel in course of representation of client is imputed to client); *Emigrant Bank v. Commonwealth Land Title Ins. Co.*, No. 15-CV-7593, 2017 WL 4286335, at *6-8 (S.D.N.Y. Sept. 26, 2017) (imputing to client information attorney obtained from title report); *In re Altmeyer*, 268 B.R. 349, 357 (Bankr. W.D.N.Y 2001) (same); *In re Bean*, 251 B.R. 196, 202 (E.D.N.Y. 2000) (same); *see also* Restatement (Second) of Agency § 9(3) (1958).

Another badge of fraud is 'the use of dummies or fictitious parties' in the transfer." *Kim*, 311 F. Supp. 3d at 612-13 (citation omitted); *accord DoubleLine Capital v. Odebrecht Finance*, 323 F. Supp. 3d 393, 467 (S.D.N.Y. 2018). Pistikos used strawman, Kaliampos, in the 2016 Transfer (SUF ¶ 216) By pretending that Kaliampos was the buyer, Pistikos was able to avoid the Pistikos Agreement with its higher purchase price of $875,000 and its mysteriously missing Rider B, mentioned next to ¶ 9 of the Pistikos Agreement, addressing Paula's right to buy back the Astoria Property. Pistikos would also have been aware of the 2016 Transfer Irregularities.

### 2.    The 2016 Transfer Was Constructively Fraudulent (Eighth Cause of Action)

#### a.    The 2016 Transfer Was Constructively Fraudulent Under § 273

##### (iii)    Paula Was Insolvent as of, or Rendered Insolvent by, the 2016 Transfer

The consideration for the 2016 Transfer did not represent "fair equivalent value", under § 272.  First, where there is an assumption of the existing mortgages.  Courts treat the value of the property transferred as being the transferor's property equity, and treat the consideration received

by the transferor as also being exclusive of assumed mortgages assumed. *In re Jacobson*, 48 B.R. 497, 499 (Bankr. D. Minn. 1985) (determining whether fair equivalent value was provided by comparing purchase price with equity remaining in the property after subtracting the remaining liens); *In re Carr*, 34 B.R. 653, 656 (Bankr. D. Conn. 1983) (same); *In re Borriello*, 329 B.R. 367, 381 (Bankr. E.D.N.Y. 2005) (calculating, for purposes of 11 U.S.C. § 550(a), value of property that had been fraudulently conveyed, by subtracting from the property's market value the amounts of two mortgages to which the property was subject at the time of the sale)*; 839 Cliffside Avenue LLC v. Deutsche Bank Nat'l Trust Co.*, No. 15-CV-4516 (SIL), 2018 WL 4608198, at *7 (E.D.N.Y. Sept. 25, 2018) (treating transferred property's value as zero when debtor held no property equity at the time of the transfer). Thus, the consideration, to Paula is to be compared to the Astoria Property's fair market value less the amounts of the mortgages. Yet there was no consideration, apart from the release of liability under mortgages, other than the cash allegedly paid to Paula, or on her behalf, of approximately $80,000, though not required by the Membership Sales Agreement.

As to the release of Paula's guarantee of the $600,000 mortgage, Paula would not have been able, to pay on the guarantees, and given her insolvency, the release could not be fair consideration.  *In re Newman*, 11 BR 628 (Bky 1981) (insolvent debtor transfer of property in exchange for agreement to pay note is not fair consideration) *aff* 15 BR 658 (SDNY 1981). Moreover, considering the Astoria Property's appraisal value of $1,075,000 in 2016, it was very unlikely Paula would have ever been required to repay on the loans, even if she had the ability to do so, rendering the releases woefully disproportionate under §272. So only approximately $80,000 was allegedly paid without a contractual obligation equity worth $370,000 under the Membership Sale Agreement, *i.e.*, the $1,075,000 appraised value of the Astoria Property less

$705,000 of mortgages assumed. Pistikos was obtaining property that was worth over four times

what he paid. *See generally 89 Pine Hollow Road Realty Corp. v. Am. Tax Fund,* 96 A.D.3d

995,998 (2d Dep't 2012) (in context of bona fide encumbrancer status case, failure to make

further inquiry upon learning that mortgagor had acquired mortgaged property for less than a

quarter of its appraised value, was  potential cloud on title)  Moreover Pistikos intended to rent

out three separate units of the Astoria Property, which made its value to him even greater than

the appraised value, which assumed the Astoria Property was to be used as a two-family

residence.

### (iv)     The 2016 Transfer Was Not Made in Good Faith

The Paula 2015 Bankruptcy Filings, Paula's 2015 Insolvency Factors, the Paula

Fraudulent Scheme Finding, the Money Judgments Against Paula, the 2016 Transfer

Irregularities, the inadequacy of the consideration of the 2016 Transfer, the 2014 and 2016 no

consideration transfers, and other things Pistikos' knew or should have known of present

evidence of fraudulent conveyances. The 2016 Transfer was not made in good faith. The 2016

Transfer was a natural extension of a pattern of fraudulent conduct on Paula's part.  *See Burns*,

165 F.R.D. at 390. Accordingly, none of them could have acted in good faith with regard to the

2016 Transfer. *See Sardis*, 113 A.D.3d at 142.

### 3.     The 2016 Transfer Should Be Voided as Violating NY's LLC Law

1847 LLC's Operating Agreement's Non-Transfer Clause prohibited any transfer of

Paula's interest in 1847 LLC, which the 2016 Transfer violated, rendering the 2016 Transfer null

and void. N.Y. Limited Liability Company Law §§ 602(b)(2), 603(a)(1); *Behrend v. New*

*Windsor Group, LLC*, 180 A.D.3d 636, 639-40 (2d Dep't 2020).

4.      **The 2016 Transfer Was Constructively Fraudulent Under DCL § 273-a**

§ 273-a serves as a yet another alternative ground to invalidate the 2016 Transfer. As

discussed *supra*, Paula made the 2016 Transfer after the Money Judgment Against Paula had

been docketed against her.[4] *See Barnette v. Bell*, 213 A.D.2d 276, 276-77 (1st Dep't 1995)

(conveyance is prima facie fraudulent when made after adverse verdict against transferor).

Paula's transfer of property available to satisfy the Money Judgment Against Paula, with the

knowledge of that fact on Paula's, Kaliampos's, and Pistikos's part, constitutes bad faith on each

of their parts, also requiring setting aside the 2016 Transfer.

5..      **The 2016 Transfer Was Constructively Fraudulent Under DCL § 275**

For the same reasons as discussed above the 2016 Transfer is also constructively

fraudulent under § 275.

**POINT II**

**CATHAY IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS TO
INVALIDATE THE CAPITAL MORTGAGE AND APHIS MORTGAGE**

**A. General Legal Principles Relating to Bad Faith Property Encumbrancing**

"[A] mortgagee's interest in the property is not protected if the mortgagee had notice of a

previous fraud affecting the title of its grantor." *Feggins v. Marks*, 171 A.D.3d 1014, 1016 (2d

Dep't 2019); *see JP Morgan Chase Bank v. Munoz*, 85 A.D.3d 1124, 1126 (2d Dep't 2011);

N.Y. Real Property Law § 266. Notice includes awareness of "facts that would lead a reasonable,

prudent lender to make inquiries concerning the circumstances of the transaction at issue."

*Feggins*, 171 A.D.3d at 1016, at which point a mortgage must make such inquiries," *Stout Street*

*Fund*, 148 A.D.3d at 746 (quoting *Mortgage Elec. Registration Sys., Inc. v. Rambaran,* 97

A.D.3d 802, 804 (2d Dep't 2012)). "If the [encumbrancer] fails to use due diligence in

---

[4] The Beneficial Judgment had also been entered against her in  2010.

examining the title, he or she is chargeable, as a matter of law, with notice of the facts which a proper inquiry would have disclosed." *Gregg v. M & T Bank Corp.*, 160 A.D.3d 936, 940 (2d Dep't 2018) Notice can be actual, constructive, or inquiry. *See Mortgage Electronic Registration Sys., Inc. v. Pagan*, 119 A.D.3d 749, 753 (2d Dep't 2014). "A mortgagee who fails to make such an inquiry is not a bona fide encumbrancer for value." *Feggins*, 171 A.D. 3d at 1016

This jurisprudence is consistent with holdings regarding other aspects of the law that have found that defendants' knowledge of facts providing inquiry notice of underlying wrongdoing is sufficient to find fraud or other culpable intent. *See Frank*, 48 F.3d at 636 (in fraudulent conveyance case, where plaintiff seeks to collapse multiple transactions into one, finding that transferee in leg of transaction to be voided needs only constructive, not actual, knowledge of the overall scheme rendering its exchange with the debtor fraudulent, *i.e.,* an "aware[ness] of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry"); *In re Manhattan Investment Fund Ltd.,* 397 B.R. 1, 12 n.16 (S.D.N.Y. 2007) *see also Pisula v. Roman Catholic Archdiocese of N.Y.*, 201 A.D.3d 88 (2d Dep't 2021) ("willful or wanton negligence or recklessness so as to evince a conscious disregard for the rights of others" is sufficient for punitive damages);

Where a title abstract shows transfer of a valuable asset between  husband and  wife for no consideration within the six-year statute of limitations for DCL Article 10, which included §§ 273, 273-a, 275, and 276, "a party must make a reasonable inquiry into the solvency of the transferor at the time of the transfer." *In re Hickey*, 168 B.R. 840, 849 (Bankr. W.D.N.Y. 1994) (*quoted in In re Altmeyer*, 268 B.R. at 356). Where a prospective mortgagee is aware of a transfer without consideration in the property's chain of title, it has an obligation to inquire about

29

the presence of other requisites of lien avoidance, including the insolvency of a transferor. *See In re Altmeyer*, 268 B.R. at 355, 356-57 (mortgagee who did not inquire about the transferor's insolvency was not entitled to invoke "safe harbor" provision of 11 U.S.C. § 550(b)(1)).

If a mortgagee is not a good faith encumbrancer, its mortgage will be extinguished or subordinated to that of another creditor of the landowner. *See, e.g.*, *Pagan*, 119 A.D.3d at 753-54 (subordinating mortgage); *89 Pine Hollow* 96 A.D.3d at 998 (extinguishing mortgage).

### B.  26 LLC Is Not a Good Faith Encumbrancer Because Capital, Its Assignor, Was Not a Good Faith Encumbrancer

"An assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities." *Stout Street Fund*, 148 A.D.3d at 746 (quoting *Arena Constr. Co. v. J. Sackaris & Sons, Inc.*, 282 A.D.2d 489, 489 (2d Dep't 2001)) (internal quotation marks omitted). Thus, when the original mortgagee was not a good faith encumbrancer, an assignee of the mortgage is not, either. *See Rambaran,* 97 A.D.3d at 804; *89 Pine Hollow*, 96 A.D.3d at 998; *Munoz*, 85 A.D.3d at 1126. 26 LLC's assignor, Capital, had actual knowledge, or recklessly disregarded such knowledge, showing that the 2014 and 2015 Transfers were fraudulent conveyances*, e.g.*, Capital's  Notice of  Fraudulent Conveyance Factors including the Paula's 2015 Bankruptcy Filings, 2014 No Consideration RPT, Paula's 2015 Insolvency Factors, the 2011 Agreement's failing to provide consideration to George, Paula's Bankruptcy Filings, the $600,000 Loan Aggravating Factors, among other things, leading to inquiry notice of Baldwin Foreclosure Complaint and George 2010 Insolvency Factors, and George 2014 Insolvency Factors.  *See 89 Pine Hollow*, 96 A.D.3d at 998 (granting summary judgment vacating and extinguishing mortgage where original mortgagee was aware that mortgagor had acquired the property by quitclaim deed at price less than a quarter of appraised value); Capital which did not make further inquiry as to Paula's ability to pay, or as to George's solvency at the time of the

2014 Transfer was not a bona fide encumbrancer. *See Miller-Francis v. Smith-Jackson*, 113

A.D.3d 28, 33, 35 (1st Dep't 2013); *In re Hickey*, 168 B.R. at 849.

Capital also required the 2015 Transfer as a condition of the $600,000 Loan, to isolate the

Astoria Property from Paula's present and future creditors  (SUF ¶ 265).  Capital's insistence

was at a time when Capital had knowledge of Fraud and that Paula had no other substantial

assets other than the Baldwin Property, then subject to a Foreclosure Judgment, and the Astoria

Property.  Capital had to know that the 2015 Transfer hindered, delayed or defrauded Paula's

existing creditors, but insisted on the 2015 Transfer, in pursuit of profit. See discussion, *supra* at

p.5-8..

### C.      26 LLC Acted in Bad Faith, and Loses Any Lien It Might Have Otherwise Had Through Its Assignor

If a mortgage assignee, at the time of the assignment, has notice of facts of which the

original mortgagee did not, such that had the assignee been the original mortgagee, it would not

have been a good-faith encumbrancer, that assignee also is not a good faith encumbrancer. *See*

*Pagan*, 119 A.D.3d at 753-54; *PennyMac Corp. v. Dean-Phillips*, 189 A.D.3d 1603, 1604-05 (2d

Dep't 2020); *see also Nassau Discount Corp. v. Allen*, 47 Misc. 2d 671, 671 (App. Term 2d

Dep't 1965) ("Good faith is a continuing requirement right up to the time the assignee parts with

value"). By August 2016, when 26 LLC purchased the $600,000 Mortgage, many of the facts

that would, at best for Capital, have given rise to at least inquiry notice, had ripened into actual

notice of fraud. By then 26 LLC had, in addition to this notice, actual or constructive notice of

the George Bankruptcy, the Paula Fraudulent Scheme Finding , the Money Judgment Against

Paula, the $600,000 Loan Aggregating Factors, and 1847 LLC's defaults on the First Aphis and

$600,000 Mortgages. 26 LLC also had at least inquiry notice of the above, and would also have

known, at time of assignment, of its sole principal, Pistikos's desire to obtain the property which

31

was on his mind when he bought the $600,000 mortgage (SUF ¶ 207) and his knowledge that

Paula was always broke (SUF ¶ 157),  Pistikos did not even do a credit check on Paula of 1847

LLC when he purchased the $600,000 Mortgage. (SUF ¶ 202.) (collectively "Bad Faith

Factors").

     An assignee of a mortgage will lose its status as a good faith encumbrancer if it has

notice of fraud at the time of the assignment, or participates in a fraud in taking the assignment.

*See PennyMac*, 189 A.D.3d at 1604-05; *Pagan*, 119 A.D.3d at 753. The predatory aspects of the

$600,000 Loan had ripened by the time of the purchase.  Pistikos, 26 LLC's principal, admitted

that 26 LLC acquired the $600,000 Mortgage, then in default and ballooning the next month, to

further Pistikos' stated objective of acquiring the Astoria Property (SUF ¶ 207), thus

demonstrating predatory intent.  Unable to pay the then overdue $600,000 Mortgage, Paula sold

her shares in 1847 LLC, in exchange for the assumption of $705,000 in mortgages, which she

could not personally pay.

    **D.**    **Aphis Is a Bad Faith Encumbrancer**

     Aphis was a bad faith encumbrancer. Aphis had actual notice, through the Aphis Title

Report, of the 2015 No Consideration RPT and of Paula "always broke" (SUF ¶ 157) and

Pistikos real purpose of acquiring the Astoria Property, and it had constructiveor inquiry notice

of the 2014 RPT No Consideration Transfer Report, Paula's Paula's Bankruptcy Filings, of the

Baldwin Foreclosure Complaint , of the IRS Tax Lien, and $137,450 Prior Judgments against

George.  It also had inquiry notice of the timing of the 2014 Transfer in relation to the Baldwin

Foreclosure Action.

     In addition, had Aphis followed private equity lending industry standards, it would have

asked Paula about any lawsuits filed against her, including any foreclosures; any judgments

against her; any bankruptcies she had filed; and any obligations she owed. (SUF ¶ 264; Zlotnick Dec. Exhibit 70.) From such inquiries, it would have independently learned of the Baldwin Foreclosure Action and the Judgment of Foreclosure and Sale. Notice of these facts, together with the absence of consideration for the 2014 Transfer, triggered an inquiry duty on Aphis's part concerning fraudulent conveyances, but Aphis apparently made no such inquiries,; See discussions *supra* .

## POINT III

### SUMMARY JUDGMENT SHOULD BE GRANTED ON ITS CLAIM FOR FRAUDULENT SCHEME TO DEPRIVE CATHAY OF ITS RIGHTS AS CREDITOR

Cathay should also be granted summary judgment on its Thirteenth Cause of Action. Paula, 1847 LLC, 26 LLC, Kaliampos, and Pistikos participated in a fraudulent scheme to deprive Cathay of its rights as a creditor under the Money Judgment Against Paula. "[A] judgment creditor may recover damages from a fraudulent conspiracy whereby the debtor, anticipating a judgment against him, divested himself of his assets and transferred them to the defendant for no consideration or for grossly inadequate consideration." 20 N.Y. Jur. 2d Conspiract—Civil Aspects § 15 (2021); *see DiMauro v. United, LLC*, 122 A.D.3d 568, 569 (2d Dep't 2014); *Levin v. Kitsis*, 82 A.D.3d 1051, 1052 (2d Dep't 2011). Paula, 1847 LLC, Kaliampos, and Pistikos, in avoidance of the Money Judgment Against Paula moved beneficial ownership of the Astoria Property out of the hands of Paula, the judgment debtor, making it more difficult to trace the true ownership of the Astoria Property by making Kaliampos, rather than Pistikos, the title owner.

Moreover, Cathay is entitled to punitive damages against each of the defendants on the Thirteenth Cause of Action. "Under New York law, punitive damages are appropriate in cases involving 'gross, wanton, or willful fraud or other morally culpable conduct.' . . . Such conduct

33

need not be directed at the general public." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir. 1991) (quoting *Borkowski v. Borkowski,* 39 N.Y.2d 982 (1976)). Here, each of the defendants as to this cause of action acted willfully. Moreover, defendants' knowledge of circumstances such that Cathay would be harmed by their conduct renders their conduct wanton and therefore worthy of the sanction of punitive damages.  *see supra* p. 30.

### POINT IV

### CATHAY IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR ATTORNEY FEES ARISING FROM DEFENDANTS' ACTUALLY FRAUDULENT CONVEYANCES

DCL § 276-a provides that where there is a violation of § 276 and fraudulent intent is established against both the transferor and transferee, both parties to the fraudulent conveyance must pay the claimant's attorney fees.  As Cathay has proven intent to defraud on the part of each party to the 2014, 2015, and 2016 Transfers, Cathay's attorney fees should be assessed against George, Paula's Administrators, 1847 LLC, Kaliampos, and Pistikos.

### <u>CONCLUSION</u>

For the reasons discussed above, Cathay's motion should be granted in all respects as prayed for in Notice of Motion.

Dated: Mineola, New York
       February  12, 2022

Yours, etc.

LAW OFFICES OF MICHAEL A. HASKEL

By:       _____
          Michael A. Haskel
          Attorneys for Plaintiff
          167 Willis Avenue
          Mineola, NY 11501-2621
          Phone: (516) 294-0250
          Email: haskelesq2@gmail.com